**CINCINNATI IMAGING VENTURE, Appellee,**

v.

**CITY OF CINCINNATI et al., Appellants.**

[Cite as *Cincinnati Imaging Venture v. Cincinnati* (1996), 116 Ohio App.3d 1.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950946.

Decided Nov. 20, 1996.

*Frost & Jacobs* and *Larry H. McMillin,* for appellee.

*Fay D. Dupuis,* City Solicitor, and *Richard Ganulin,* Assistant City Solicitor, for appellants.

*Per Curiam.*

The appellants, the city of Cincinnati and G.A. Papania, its tax commissioner, appeal from the order of the trial court reversing the determination of the Finance Board of Review and awarding the appellee, Cincinnati Imaging Venture ("CIV"), interest on a municipal income tax refund. In arriving at its decision, the trial court determined that the state statute mandating that such interest be paid, R.C. 718.06(D), preempted the city's resort to its own ordinance, Cincinnati Municipal Code 311-27, "Section 311-27," to deny interest. The appellants assert in their three assignments of error that the conclusion that R.C. 718.06(D) preempts Section 311-27 is wrong; that R.C. 718.06(D) does not, in fact, apply; and that, even if R.C. 718.06(D) does apply, the city maintains the residual authority to determine when a municipal tax return is "complete" for the purpose of triggering its application. For the reasons that follow, we find none of these arguments persuasive and thus affirm the judgment of the trial court.

Briefly, CIV timely filed its original 1989, 1990, and 1991 municipal income tax returns. After an audit conducted by the Cincinnati Income Tax Bureau, these returns were accepted as filed. CIV subsequently filed amended returns, which were accepted as filed by the city on April 12, 1994, after CIV had provided documentation substantiating the validity of its recharacterization of a transaction that significantly reduced its tax liability. A refund was processed by the Cincinnati Income Tax Bureau on June 16, 1994. The refund was paid without interest.

CIV appealed the decision to deny it interest on its refund to the Finance Board of Review. CIV's appeal was based upon R.C. 718.06(D), which provides:

"Interest shall be allowed and paid on any overpayment by a taxpayer of any municipal income tax obligation from the date of the overpayment until the date of the refund of the overpayment, except that if any overpayment is refunded within ninety days after the final filing date of the annual return or ninety days after the complete return is filed, whichever is later, no interest shall be allowed on the refunded overpayment. For purposes of computing the payment of interest on overpayments, no amount of tax for any taxable year shall be treated

as having been paid before the date on which the tax return for that year was due without regard to any extension of time for filing that return. The interest shall be paid at the rate of interest prescribed by section 5703.47 of the Revised Code."

The Finance Board of Review denied the appeal. In doing so, the board relied upon Section 311–27, which provides in part:

"Whenever a taxpayer's return indicates that a refund is due and a refund is not issued within 90 days after the tax commissioner has received proper verification and substantiation as to the validity of the refund claim interest shall be paid at the rate prescribed by Section 5703.47 of the O.R.C."

The board determined that Section 311–27 had been satisfied, based upon its conclusion that the ninety-day period did not begin to run until the amended returns had been accepted as filed, in other words, not until April 12, 1994, or after CIV had submitted the documentation supporting the change to its original returns.

CIV subsequently appealed the board's decision to the trial court, which, as noted, found that R.C. 718.06(D) preempted the municipal code section. The trial court stated the following in its memorandum of decision and order:

"The city's authority to levy its income tax is subject to regulation by the state of Ohio. By the express terms of Revised Code Section 718.06(D), the city is obligated to pay interest on tax refunds from the original date of payment of the tax. The city has refused this statutory obligation through the terms of Cincinnati Code Section 311–27. However, that city ordinance is in direct conflict with state law and must fall. CIV is entitled to interest on its tax refund from the original payment date in accordance with the state rate[,] which interest totals $11,922.58. CIV also is entitled to prejudgment interest on such sum from June 12, 1994 to the date of judgment."

In their first assignment of error, the appellants challenge the constitutionality of R.C. 718.06(D), asserting that it "transcends the authority reserved to the General Assembly under Article XVIII, Section 13 of the Ohio Constitution." Specifically, they argue that while Section 13, Article XVIII permits the General Assembly to limit the levy of taxes by municipalities, it does not allow the General Assembly to interfere with local administration and regulation of lawfully levied taxes. The imposition of interest on overpaid taxes, they argue, is a matter of the administrative and regulatory authority reserved to the city.

Section 13, Article XVIII of the Ohio Constitution provides:

"Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as may be provided by

law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities."

It is difficult to interpret this language, granting to the General Assembly the absolute right to limit the power of municipalities to impose taxes, as allowing these same municipalities the unfettered right to regulate the levy and collection of those taxes. The sole authority cited by the appellants, *State ex rel. Zielonka v. Carrel* (1919), 99 Ohio St. 220, 124 N.E. 134, does not support their position.

As CIV points out in its brief, R.C. Chapter 718 regulates not only the subject of municipal taxation, but also the levy and collection of municipal income taxes. For example, R.C. Chapter 718 provides that taxes can be levied only at a uniform rate (R.C. 718.01[B]); that a tax in excess of one percent can be levied only if approved by a referendum (R.C. 718.01[C]); that municipalities may not grant exemption from tax except as specified by state law (R.C. 718.01[D]); and that certain statutes of limitations apply for prosecution of municipal offenses for failing to file a return (R.C. 718.06[B]). Thus, acceptance of appellants' position would require us to declare unconstitutional not only R.C. 718.06(D), but also a large part of R.C. Chapter 718. Given the lack of persuasive authority for the appellants' position, we choose not to do so. In sum, we hold that Cincinnati's tax must conform to the requirements of R.C. Chapter 718, including the payment of interest on refunds.

■ The appellants assert further under their first assignment of error that, even if it is assumed that the General Assembly does have the constitutional authority to direct municipalities when and how to provide refunds on overpayments, R.C. 718.06(D) leaves open the question of what constitutes a "complete return," thus, implicitly empowering the municipality to provide its own definition. To hold otherwise, they argue, would be to evoke the doctrine of "implied preemption," which they describe ominously as "nebulous, murky, and oft-criticized." See Dewey, Municipal Income Taxes in Ohio: Limitations on the Tax Base by State Pre-emptions (1976), 7 U.Tol.L.Rev. 501.

Whatever the criticism of the doctrine of "implied preemption," it strikes us as far more "nebulous" and "murky" to allow a municipality to circumvent a state statute which is a legitimate exercise of the state's preemptive power by focusing on key terms which are not statutorily defined and insisting upon its own definition. As argued by CIV, such a position "directly conflicts with the overriding authority of the state of Ohio to regulate how municipalities will levy and administer local income taxes."

Even were we to assume that the appellants had such authority to define a "complete return," the definition which they proffer seems entirely one of

convenience. According to the appellants' definition, a complete return means an absolutely correct return, *i.e.,* one not subject to further amendment. Under the appellants' definition, a return once thought complete, *i.e.,* one accepted as filed by the tax bureau as complete, somehow loses its completeness once an amended return is filed. As applied to the present case, the appellants' argument would require a finding that CIV did not actually file "complete returns" for the years 1989, 1990, and 1991 until April 12, 1994.

We are not convinced, however, that the phrase "complete return" as used in R.C. 718.06(D) was intended to have such elastic meaning. Nothing in the text of the statute supports such a conclusion. Nor does this conclusion comport with common experience, since the city certainly does not prosecute taxpayers who file amended returns for failure to file a "complete return" in the tax years that the original returns were filed. We hold, rather, that a "complete return" in the context of R.C. 718.06(D) is simply that, a complete (meaning fully filled-out) return for the appropriate tax year.

██ In its second assignment of error, the appellants refine somewhat their earlier argument, asserting that, because R.C. 718.06(D) does not expressly address amended returns, the General Assembly has not preempted the city from applying its own ordinance to the facts of this case. Again we disagree. R.C. 718.06(D) provides that "[i]nterest shall be allowed and paid on *any* overpayment * * * *from the date of the overpayment* until the date of the refund of the overpayment * * *." (Emphasis added.) To adopt the appellants' position would require us to hold that an overpayment does not occur when the taxes are actually overpaid, but, rather, when the overpayment is realized by virtue of an amended return. This argument ignores both the fact that amended returns by their nature relate backward in time, and that, as a consequence of their acceptance, the taxing authority has been improperly in possession of the taxpayer's funds, in essence unjustly enriched, from the date of the original payment.

Under its third assignment of error, which is essentially a recapitulation of their second, the appellants maintain that if we fail to adopt their position, a "perverse incentive" is created that will induce taxpayers "to file inadequate returns requesting refunds that the city cannot verify or substantiate but that the city might grant in order to avoid paying interest on the refund." According to the appellants, it makes far greater sense to avoid this speculative doomsday scenario than to require the city to pay interest on overpaid taxes which have been in its possession for over ninety days. Suffice it to say that we do not agree with this reasoning, and, more importantly, neither does the General Assembly.

6

The appellants' three assignments of error are, accordingly, overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., GORMAN and SUNDERMANN, JJ., concur.