[Cite as *Athens v. Testa*, 2019-Ohio-277.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

City of Athens et al.,                               :

     Plaintiffs-Appellants,                      :                    Nos. 18AP-144
                                           and
v.                                                  :                    18AP-189
                                         (C.P.C. No. 17CV-10258)
Joseph A. Testa, Tax Commissioner                   :
of the State of Ohio,
                                       (REGULAR CALENDAR)
     Defendants-Appellees.                       :

                                            :

---

D E C I S I O N

Rendered on January 29, 2019

---

**On brief:** *Frost Brown Todd LLC, Eugene L. Hollins, Stephen J. Smith, Frank J. Reed, Jr., Yazan S. Ashrawi,* **and** *Thaddeus M. Boggs,* **for appellants. Argued:** *Thaddeus M. Boggs.*

**On brief:** *Walter Haverfield LLP, Darrell A. Clay,* **and** *Brendan D. Healy,* **for appellants. Argued:** *Darrell A. Clay.*

**On brief:** *Brennan, Manna, & Diamond, LLC, Jeffrey C. Miller, Martin J. Pangrace, Victoria L. Ferrise, Bryan E. Meek,* **and** *Jacob A. Bruner,* **for appellees. Argued:** *Jeffrey C. Miller.*

**On brief:** *Zaino Hall & Farrin LLC, Richard C. Farrin,* **and** *Thomas M. Zaino,* **for** *Amici Curiae.*

---

APPEALS from the Franklin County Court of Common Pleas.

KLATT, P.J.

{¶ 1}    Plaintiffs-appellants, two different coalitions of Ohio municipal corporations, appeal a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Tax Commissioner Joseph A. Testa and the state of Ohio (together, "the State"). For the following reasons, we affirm that judgment.

{¶ 2}    Many Ohio municipal corporations impose a tax on income earned within their boundaries.  When applied to businesses, that tax is known as the municipal net profit tax.   This case focuses on the constitutionality of the General Assembly's efforts to streamline aspects of the various municipalities' income tax systems and centralize the collection and administration of the net profit tax.

{¶ 3}    Two recent enactments are at issue in this case.  First, in 2014, the 130th General Assembly enacted Sub.H.B. No. 5 (hereinafter, "H.B. 5") to establish more uniformity in the way Ohio municipalities administer their income tax systems.   As amended by H.B. 5, R.C. 715.013(B) permits municipal corporations to levy an income tax "in accordance with Chapter 718 of the Revised Code."   *Accord* R.C. 718.04(A) ("A municipal corporation may levy a tax on income and a withholding tax if such taxes are levied in accordance with the provisions and limitations specified in [R.C. Chapter 718]."). In relevant part, the provisions adopted in H.B. 5 require that municipal corporations:

- Maintain a local board of tax review with the composition, powers, and procedures set forth in R.C. 718.11;

- Charge interest on untimely or partial income tax payments at the rate specified in R.C. 718.27(A) and (C)(1);

- Charge a penalty at the rate specified if a taxpayer makes an untimely or partial income tax payment or a taxpayer fails to timely file a return (R.C. 718.27(C)(2));

- Ensure that any rules adopted to administer a municipal income tax do not conflict with any provision of R.C. Chapter 718 (R.C. 718.30); and

- Not pay a person hired or retained to examine or inspect a taxpayer's books on a contingency basis (R.C. 718.31).

Additionally, H.B. 5 sets forth standards a municipal tax administrator may consider when deciding whether to accept a compromise or payment-over-time agreement to resolve a claim for unpaid income taxes. R.C. 718.28(C).

{¶ 4} In 2017, the 132d General Assembly enacted Am.Sub.H.B. No. 49 (hereinafter, "H.B. 49"), the biennial budget bill for fiscal years 2018 and 2019. H.B. 49 adopted new sections R.C. 718.80 through 718.95. These sections provide business taxpayers with the opportunity to opt for the State to collect and administer the taxpayer's municipal net profit taxes.

{¶ 5} Prior to the advent of H.B. 49, each municipality that imposed a net profit tax controlled the collection and administration of that tax, resulting in significant compliance costs for business taxpayers that operated in multiple municipalities. Those taxpayers may now register to file a single return and pay all net profit taxes through the State's centralized system. If a business taxpayer does not opt into the state system, it remains subject to the rules and procedures of the municipalities in which it owes net profit taxes.

{¶ 6} Under the new provisions, the tax commissioner is the sole administrator of all municipal net profit taxes owed by taxpayers who choose to file with the State. R.C. 718.80(A)(1). Consequently, the tax commissioner collects the taxes and estimated tax payments, audits taxpayers, makes assessments against taxpayers for delinquent or incorrect returns or payments, and issues refunds of overpaid taxes. R.C. 718.85(A)(1) (requiring submission of annual net-profit-tax returns and taxes to the tax commissioner); R.C. 718.88(C) (requiring submission of declarations of estimated net profit taxes and estimated net-profit-tax payments to the tax commissioner); R.C. 718.90 (authorizing the tax commissioner to make assessments and pursue collection of unpaid assessments); R.C. 718.91 (authorizing the tax commissioner to issue refunds); R.C. 718.93 (authorizing the tax commissioner to examine a taxpayer's records to verify the accuracy of a return or to ascertain the amount of net profit tax due).

{¶ 7} Each month, the tax commissioner must certify to the director of budget and management the amount of net-profit-tax revenue due to each municipal corporation. R.C. 718.83(A). The director of budget and management must then distribute the certified amount to each municipal corporation. *Id.* However, the State retains one-half percent of

all net profit taxes paid to the tax commissioner as a fee for the collection and administration services the commissioner provides. R.C. 718.85(B).

{¶ 8} To enable the tax commissioner to administer the disparate net profit taxes of each municipality, all municipalities with an income tax must certify to the tax commissioner the rate of the tax, as well as any increase in that rate. R.C. 718.80(C)(1)(a) and (b). Additionally, within 90 days of receiving notice that a taxpayer has opted to file with the State, a municipality must report to the tax commissioner specified information about the taxpayer, including whether the taxpayer is entitled to any net operating loss carryforward or tax credits. R.C. 718.80(C)(2). If a municipal corporation fails to timely provide any of the required information, the tax commissioner may penalize it by withholding 50 percent of the net-profit-tax revenue due to it. R.C. 718.80(C)(3).

{¶ 9} When a business taxpayer conducts operations both inside and outside a taxing municipality, the business only owes tax on the net profit apportioned to the municipality. For all municipal net profit taxpayers, a three-factor test based on a business' payroll, sales, and property determines the portion of a business' net profits attributable to a particular municipality. R.C. 718.02(A) (setting forth the three factors applicable to business taxpayers *not* electing to file with the State); R.C. 718.82(A) (setting forth identical factors for apportioning net profit for business taxpayers electing to file with the State). If a taxpayer opts into the State's centralized system, the tax commissioner may approve an alternative apportionment if the three factors do not fairly represent the extent of a taxpayer's business activity in a municipal corporation. R.C. 718.82(B).

{¶ 10} In addition to permitting the State to collect and administer net profit taxes, H.B. 49 also eliminated the "throwback rule." Under that rule, a business taxpayer's net profit in a particular municipality included gross receipts from sales of goods shipped from the municipality to purchasers outside the municipality if the taxpayer had not solicited sales at the location of the delivery. Former 718.02(D)(1)(c). In other words, in certain circumstances, gross receipts from sales to customers outside a municipal corporation were "thrown back" to the municipal corporation and counted as taxable net profit. Due to the amendments made in H.B. 49, municipalities are no longer permitted to tax such net profit.

{¶ 11} Finally, in uncodified Section 803.100(B), H.B. 49 required each municipal corporation to adopt, by ordinance or resolution, the provisions of R.C. 718.80 through

718.95 by January 31, 2018.  This requirement corresponds with the mandate of R.C. 718.04(A), which obligates municipal corporations to levy income taxes "in accordance with the provisions and limitations specified in [R.C. Chapter 718]."

{¶ 12} On November 16, 2017, a coalition of Ohio municipalities (collectively, "the Athens plaintiffs") filed an action for declaratory judgment and injunctive relief against the State.[1]  In short, the Athens plaintiffs challenged the constitutionality of the provisions of H.B. 5 and H.B. 49 set forth above.  The Athens plaintiffs sought a declaratory judgment stating:  (1) the challenged provisions of H.B. 5 violate the Ohio Constitution's Home Rule Amendment; (2) the challenged provisions of H.B. 49 violate the Ohio Constitution's Home Rule Amendment; (3) H.B. 49 violates the Ohio Constitution's One-Subject Rule; (4) the challenged provisions of H.B. 49 unconstitutionally impair contractual obligations in violation of Article II, Section 28 of the Ohio Constitution; (5) the challenged provisions of H.B. 49 effect a conversion of the Athens plaintiffs' property; (6) the challenged provisions of H.B. 49 effect a taking of property without just compensation in violation of Article I, Section 19 of the Ohio Constitution; and (7) the challenged provisions of H.B. 49 effect a deprivation of property without remedy by due course of law in violation of Article I, Section 16 of the Ohio Constitution.  The Athens plaintiffs also sought preliminary and permanent injunctions enjoining the State from taking any action to enforce the challenged provisions of H.B. 5 and H.B. 49.

{¶ 13} With the agreement of all parties, the trial court entered an order temporarily staying the mandate of uncodified Section 803.100(B) of H.B. 49.  Under the terms of the stay, municipalities did not have to adopt the provisions of R.C. 718.80 through 718.95 until February 24, 2018 or until further order of the court.  In the same order, the trial court set a briefing schedule for the Athens plaintiffs' anticipated motion for a preliminary injunction.  The trial court also scheduled a preliminary injunction hearing for February 12 and 13, 2018.

{¶ 14} Before briefing of the preliminary injunction motion concluded, a second coalition of Ohio municipalities (collectively, "the Elyria plaintiffs") moved to intervene in

---

[1] The Athens plaintiffs consist of 163 Ohio municipalities, including Cleveland, Columbus, Cincinnati, Akron, and Dayton.

the Athens plaintiffs' action.[2] The Elyria plaintiffs had filed an action for declaratory judgment and injunctive relief in the Lorain County Court of Common Pleas on December 12, 2017. In their complaint, the Elyria plaintiffs had asked the trial court to (1) declare that the challenged provisions of H.B. 49 violate the Home Rule Amendment of the Ohio Constitution and (2) enjoin the implementation, application, and effectiveness of the challenged provisions of H.B. 49.

{¶ 15} Rather than answering the Elyria plaintiffs' complaint, the State moved to transfer the action to the Franklin County Court of Common Pleas. When the Lorain County court granted that motion, the Elyria plaintiffs decided to move to intervene in the Athens plaintiffs' action so they could participate in the upcoming preliminary injunction hearing. The trial court granted the Elyria plaintiffs' motion.

{¶ 16} At the preliminary injunction hearing, the Athens and Elyria plaintiffs and the State presented witnesses and documentary evidence. The trial court, however, never explicitly ruled on the motion for preliminary injunction. Instead, in a judgment issued February 21, 2018, the trial court concluded that it could resolve the actions before it on their merits because the outcome of those actions hinged on legal determinations, i.e., whether the challenged provisions of H.B. 5 and H.B. 49 were facially unconstitutional. The trial court found: (1) the challenged provisions of H.B. 5 and H.B. 49 were constitutional under the Home Rule Amendment, (2) H.B. 49 did not violate the One-Subject Rule, and (3) the Athens plaintiffs' remaining legal challenges to H.B. 49 all failed. The trial court also dissolved the stay of the municipalities' obligation under uncodified Section 803.100 of H.B. 49 to adopt the provisions of R.C. 718.80 through 718.95.

{¶ 17} The Athens plaintiffs now appeal the February 21, 2018 judgment and assign the following errors:

> 1. The trial court erred in granting judgment to the Defendant[s]-Appellees.
>
> 2. The trial court erred in denying Plaintiff[s]-Appellants' request for preliminary injunction.

---

[2] The Elyria plaintiffs consist of 29 municipalities, which, with one exception, are located in northeastern Ohio.

{¶ 18} The Elyria plaintiffs also appeal the February 21, 2018 judgment, and they assign as error:

> [1.]  The trial court acted in derogation of Civ.R. 65(B)(2) when, in addressing Plaintiffs' Motion for Preliminary Injunction, it dismissed Plaintiffs' Complaint without first issuing an order consolidating the trial on the merits with the preliminary injunction hearing.
>
> [2.]  The trial court erred in finding that H.B. 49's amendments to Chapter 718 of the Ohio Revised Code did not violate Plaintiffs' Home Rule Authority under Article XVIII, Section 3 of the Ohio Constitution.

{¶ 19} We will begin our review with the Elyria plaintiffs' first assignment of error. By that assignment of error, the Elyria plaintiffs argue that the trial court erred in dismissing their complaint without first consolidating the preliminary injunction hearing with a trial on the merits.

{¶ 20} Initially, the Elyria plaintiffs misapprehend the nature of the trial court's February 21, 2018 judgment.  That judgment did not dismiss the Elyria plaintiffs' action; it entered a judgment on the merits in the State's favor.  We thus interpret the Elyria plaintiffs' first assignment of error as challenging the February 21, 2018 judgment as a premature resolution of the merits of their action.  While we agree that the trial court erred as argued, we do not find that the error warrants a reversal of the February 21, 2018 judgment.

{¶ 21} Generally, a trial court may not dispose of a case on the merits following a hearing for a preliminary injunction without first consolidating that hearing with a trial on the merits or otherwise giving notice, either before or during the hearing, that the court intends to consider the merits.  *Cairelli v. Brunner*, 10th Dist. No. 15AP-854, 2016-Ohio-5535, ¶ 24; *Ohio Serv. Group, Inc. v. Integrated & Open Sys., LLC*, 10th Dist. No. 06AP-433, 2006-Ohio-6738, ¶ 10; *Seasonings Etcetera, Inc. v. Nay*, 10th Dist. No. 92AP-1056 (Feb. 23, 1993).  This prohibition arises from Civ.R. 65(B), which states, "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."  Allowing discretionary consolidation saves time and expense for the court and the litigants.  *Cairelli* at ¶ 26; *Ohio Serv. Group* at ¶ 10.  However, to ensure the parties a full and fair opportunity to litigate, the trial court must provide the parties with a

clear and unambiguous notice of the court's intent to consolidate in enough time to allow the parties to prepare and present their cases at the hearing. *Cairelli* at ¶ 24; *Ohio Serv. Group* at ¶ 10.

{¶ 22} Here, the trial court gave no advance notice that it intended to forgo deciding the preliminary injunction motion and, instead, issue a judgment on the merits. The trial court, therefore, erred. However, not all error results in a reversal of a trial court's judgment. In order to secure a reversal, an appellant " 'must not only show some error but must also show that that error was prejudicial to him.' " *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 185 (2000), quoting *Smith v. Flesher*, 12 Ohio St.2d 107, 110 (1967); *accord Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶ 17 (10th Dist.) ("A reviewing court will not disturb a judgment unless the error contained within is materially prejudicial to the complaining party."). Thus, in applying Fed.R.Civ.P. 65, federal courts of appeals have refused to reverse absent a showing that "the procedures followed resulted in prejudice, i.e., that the lack of notice caused the complaining party to withhold certain proof which would show his entitlement to relief on the merits." *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1106 (5th Cir.1972); *accord Johnson v. White*, 528 F.2d 1228, 1231 (2d Cir.1975) (holding that, to obtain a reversal due to a trial court's belated disclosure of its intent to consolidate, "a party must show, not only surprise but 'prejudice' in the sense of having other material evidence to introduce").[3]

{¶ 23} Relying on *Ohio Service Group*, the Elyria plaintiffs argue that mere failure to provide notice constitutes prejudicial error. This argument misreads *Ohio Service Group*. In that case, the appellant's counsel told the trial court during the preliminary injunction hearing that he needed to conduct further discovery when the trial court suggested that it might "go ahead and resolve" the "whole thing." *Id.* at ¶ 17. In response, the trial court agreed to only rule on injunctive relief so the appellant would have an opportunity to gather and present additional evidence. Despite the trial court's agreement to defer deciding the case on its merits, the trial court subsequently entered a final judgment against the appellant. On appeal, we held that "*under the facts and circumstances of this*

---

[3] Federal law does not control interpretation of the Ohio Rules of Civil Procedure, but it can be instructive where the federal and Ohio rules are similar. *First Bank v. Mascrete, Inc.*, 79 Ohio St.3d 503, 508 (1997). Here, we draw on federal law because Fed.R.Civ.P. 65(a)(2) and Ohio Civ.R. 65(B) are substantially similar.

*case*, the court's failure to provide [ ] notice before disposing of the merits of the case * * *, constitute[d] prejudicial error." (Emphasis added.) *Id.* at ¶ 12.

{¶ 24} Based on the circumstances present in *Ohio Service Group*, the error—the lack of notice—gave rise to prejudice because it deprived the appellant of the promised opportunity to present additional evidence following discovery. In other words, the appellant was prejudiced because it lost the ability to fully and fairly litigate its case prior to final judgment. Contrary to the Elyria plaintiffs' contention, we did not conclude that lack of notice results in prejudice in all cases.

{¶ 25} Nevertheless, we recognize that, like the appellant in *Ohio Service Group*, the Elyria plaintiffs were denied the opportunity to conduct discovery. While that caused prejudice to the appellant in *Ohio Service Group*, the circumstances are different in this case. Unlike the appellant in *Ohio Service Group*, the Elyria plaintiffs do not pursue relief dependent on facts.

{¶ 26} In their complaint, the Elyria plaintiffs asked for a declaratory judgment stating that the challenged provisions of H.B. 49 violate the Home Rule Amendment of the Ohio Constitution. A party seeking constitutional review of a statute may either pursue a facial challenge to the statute or challenge the statute as applied to a specific set of facts. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 26. A facial challenge contends that the statute may not be enforced under any circumstances, while an as-applied challenge asserts that the statute is unconstitutional only in a particular circumstance. *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 21. The Elyria plaintiffs, who assert that H.B. 49 is unconstitutional under all circumstances, raise a facial challenge. The resolution of such a challenge does not require any reference to extrinsic facts. *Id.*; *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, ¶ 15. Consequently, the Elyria plaintiffs' inability to conduct discovery did not prejudice it. Indeed, when pressed on this point during oral argument, the Elyria plaintiffs' counsel could not articulate any relevant evidence he would have sought in discovery or produced during the hearing if the trial court had provided proper notice.

{¶ 27} Without a showing of prejudice, the Elyria plaintiffs are not entitled to a reversal. Accordingly, we overrule the Elyria plaintiffs' first assignment of error.

{¶ 28} We next turn to the Athens plaintiffs' first assignment of error.  The Athens plaintiffs' first assignment of error overlaps with the Elyria plaintiffs' second assignment of error to the extent that both argue that H.B. 49 violates the Home Rule Amendment of the Ohio Constitution.  We, however, will begin our analysis with an argument that only the Athens plaintiffs assert:  H.B. 49 also violates the One-Subject Rule of the Ohio Constitution.

{¶ 29} Legislative enactments are entitled to a strong presumption of constitutionality.  *Arbino* at ¶ 25; *Reading* at ¶ 25.  A party only rebuts that presumption by establishing beyond a reasonable doubt that the enactment is unconstitutional.  *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, ¶ 12; *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 11.  Thus, courts resolve any doubts regarding the constitutional validity of a legislative enactment in favor of the statute.  *State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, ¶ 5.  The constitutionality of an enactment is a question of law, which appellate courts review de novo.  *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, ¶ 16; *Fowler v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 16AP-867, 2017-Ohio-7038, ¶ 7.

{¶ 30}   Pursuant to Article II, Section 15(D) of the Ohio Constitution, "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title."  The purpose of this provision, called the One-Subject Rule, is to prevent "logrolling," "the practice by which several matters are consolidated in a single bill for the purpose of obtaining passage for proposals which would never achieve a majority if voted on separately."  *Hoover v. Bd. of Cty. Comms.*, 19 Ohio St.3d 1, 6 (1985).  The One-Subject Rule precludes logrolling by prohibiting enactments dealing with more than one subject on the theory that the best explanation for such enactments is a tactical one, i.e., logrolling.  *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 143 (1984).

{¶ 31} The One-Subject Rule is a mandatory provision because contravening it invalidates an enactment.  *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, ¶ 53-54.  However, the Ohio judiciary's role in the enforcement of the One-Subject Rule remains limited.  *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, ¶ 16. Ohio courts must accord "the General Assembly 'great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number

excessively, or to prevent legislation from embracing in one act all matters properly connected with one general subject.' " *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, ¶ 27, quoting *Dix* at 145.

{¶ 32} Given the wide latitude owed to the General Assembly, courts liberally construe the term "subject" for purposes of the rule. *Ohio Civ. Serv. Emps. Assn.* at ¶ 16. Thus, "[t]he mere fact that a bill embraces more than one topic is not fatal as long as a common purpose or relationship exists between the topics." *Id.* at ¶ 17; *accord Dix* at 146 (holding that "the one-subject provision is not directed at plurality but at disunity in subject matter"). Additionally, only "a manifestly gross and fraudulent violation" of the One-Subject Rule will invalidate a statute. *Dix* at paragraph one of the syllabus; *accord Nowak* at paragraph one of the syllabus (approving the manifestly-gross-and-fraudulent-violation standard, but modifying *Dix* to the extent that *Dix* held the One-Subject Rule was directory, not mandatory). This standard recognizes that:

> there are rational and practical reasons for the combination of topics on certain subjects. It acknowledges that the combination of provisions on a large number of topics, as long as they are germane to a single subject, may not be for purposes of logrolling but for the purposes of bringing greater order and cohesion to the law or of coordinating an improvement of the law's substance.

*Dix* at 145. Consequently, if there exists any "practical, rational or legitimate reason for combining provisions in one act," no violation of the One-Subject Rule occurs. *Ohio Civ. Serv. Emps. Assn.* at ¶ 17. Determining whether a bill complies with the One-Subject Rule "is dependent primarily, if not exclusively, on a case-by-case, semantic and contextual analysis." *Dix* at 145.

{¶ 33} The analysis of an appropriations bill, such as H.B. 49, under the One-Subject Rule presents a court with a difficult challenge. *Ohio Civ. Serv. Emps. Assn.* at ¶ 18. Appropriations bills, which fund the state's programs and departments, necessarily address a wide range of topics. *Id.* These bills, however, are bound by a single subject: the balancing of state expenditures against state revenues to ensure operation of state programs. *Id.* at ¶ 23; *accord State ex rel. Ohio Roundtable v. Taft*, 10th Dist. No. 02AP-911, 2003-Ohio-3340, ¶ 48 ("[B]udget bills by their nature will contain a multiplicity of

items united by the common subject of appropriations for the operation of governmental services in the state of Ohio.").

{¶ 34} The Athens plaintiffs argue that the challenged provisions, R.C. 718.80 through 718.95, do not share a common purpose or relationship with the other provisions of H.B. 49 because they do not require any state expenditure of funds to ensure their implementation. The Athens plaintiffs are incorrect. Municipal income tax administration is a line item in the Department of Taxation's budget. In uncodified Section 409.10 of H.B. 49, the General Assembly appropriated to the municipal-income-tax-administration fund $2.4 million in fiscal year 2018 and $5.15 million in fiscal year 2019. Previously, the money in the municipal-income-tax-administration fund solely paid the costs of administering the municipal income tax on electric-light and local-exchange-telephone companies. Ohio Legislative Service Commission, Analysis of Enacted Budget, Department of Taxation, at 15 (Aug. 2017), available at https://www.lsc.ohio.gov/documents/budget/132/MainOperating/greenbook/TAX.PDF (accessed Jan. 25, 2019). Compared with the amount allocated to that fund for fiscal year 2017, the 2018-2019 budget "provide[d] an additional $2.25 million in FY 2018 and $5.0 million in FY 2019 for the Department's administrative costs from the expected additional workload" occasioned by R.C. 718.80 through 718.95. *Id.* at 4. Thus, contrary to the Athens plaintiffs' assertions, the General Assembly did not intend the State's retention of one-half percent of the net profit taxes collected to cover all the expected costs. Enactment of R.C. 718.80 through 718.95 required expenditure of State funds, which was accounted for in the state budget.

{¶ 35} While the appropriation of funds relates to the single subject of an appropriations bill, mere impact on the state budget does not ensure the challenged provisions of an appropriations bill will survive review under the One-Subject Rule. *See State ex rel. Ohio Civ. Serv. Emps. Assn.*, 104 Ohio St.3d 122, 2004-Ohio-6363, at ¶ 33 (rejecting the proposition that "a provision that impacts the state budget, even if only slightly, may be lawfully included in an appropriations bill merely because other provisions in the bill also impact the budget"). Here, however, the provisions at issue not only require an expenditure, they also relate to government revenue, the other main concern of an appropriations bill. While the revenues at issue stem from municipal—not state—tax, we

cannot ignore the interconnected nature of the municipal and state fiscal systems. Given this connection, there is a practical, rational, and legitimate reason to include the challenged provisions in H.B. 49. Therefore, we conclude that the insertion of new sections R.C. 718.80 through 718.95 in H.B. 49 is not a manifestly gross and fraudulent violation of the One-Subject Rule.

{¶ 36} We next turn to an argument contained in the Athens plaintiffs' first assignment of error and the Elyria plaintiffs' second assignment of error; namely, that the challenged provisions of H.B. 49 violate the Home Rule Amendment of the Ohio Constitution. Plaintiffs argue that the Home Rule Amendment empowers municipalities to collect and administer municipal taxes and R.C. 718.80 through 718.95 unconstitutionally infringes upon these powers of local self-government.

{¶ 37} Pursuant to Article XVIII, Section 3 of the Ohio Constitution, "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Importantly, this provision, called the Home Rule Amendment, endows municipal corporations with two types of power: (1) all powers of local self-government, and (2) the power to adopt and enforce police regulations that are not in conflict with general state laws.[4] In this case, we focus on the power granted to municipalities to exercise local self-government because that power includes the authority to tax. *See New York Frozen Foods, Inc. v. Bedford Heights Income Tax Bd. of Rev.*, 150 Ohio St.3d 386, 2016-Ohio-7582, ¶ 29; *Cincinnati Bell Tel. Co. v. Cincinnati*, 81 Ohio St.3d 599, 602 (1998).

{¶ 38} The Home Rule Amendment became part of the Ohio Constitution when voters approved the language proposed by the 1912 Ohio Constitutional Convention. Prior to the passage of the Home Rule Amendment, the Ohio Constitution did not invest any power in the municipalities and, instead, municipal power derived from enactments of the General Assembly. *Cincinnati Bell Tel. Co.* at 605. Consequently,

---

[4] Notably, the words "as are not in conflict with general laws" restrict a municipality's exercise of the second power, but not the first. *In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, ¶ 21; *accord Reading*, 109 Ohio St.3d 193, 2006-Ohio-2181, at ¶ 32 (holding that "the requirement in Section 3, Article XVIII that municipal regulations must not conflict with general laws is not intended as a restriction on the substantive powers of local self-government").

municipalities of the state, especially the larger ones, were continually at the door of Ohio's General Assembly asking for additional political power for municipalities, or modifications in some form of previous delegations of such power. Such power, being legislative only, could be withdrawn from the municipalities, or amended, at any session of the Legislature.

Municipalities were, therefore, largely a political football for each succeeding Legislature, and there was neither stability of law, touching municipal power, nor sufficient elasticity of law to meet changed and changing municipal conditions. To the sovereign people of Ohio the municipalities appealed in the constitution convention of 1912, and the Eighteenth Amendment, then known as the "Home Rule" Amendment, was for the first time adopted as a part of the Constitution of Ohio, wherein the sovereign people of the state expressly delegated to the sovereign people of the municipalities of the state full and complete political power in all matters of "local self-government."

*Perrysburg v. Ridgway*, 108 Ohio St. 245, 255 (1923). Therefore, since the adoption of the Home Rule Amendment, all municipalities derive the power of local self-government directly from the Ohio Constitution. *Id.* at paragraph one of the syllabus; *accord Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, ¶ 17 ("Municipal power over matters of local self-government is derived from the Constitution.").

{¶ 39} Because the municipal power of local self-government originates in the Ohio Constitution, "the General Assembly has authority to enact such laws to be applicable in cities 'only where and to the extent that such laws will not restrict the exercise by such cities of their powers of local self-government.' " *State Personnel Bd. of Rev. v. Bay Village Civ. Serv. Comm.*, 28 Ohio St.3d 214, 218 (1986), quoting *State ex rel. Canada v. Phillips*, 168 Ohio St. 191, 195 (1958); *accord Canton v. Whitman*, 44 Ohio St.3d 62, 66 (1975) (holding that "the state may not restrict the exercise of the powers of self-government within a city"). " 'If all powers of municipal self-government must be subject to general laws, then clearly cities do not have home rule; they have only such powers of local self-government as the legislature of the state allows to them, and cities of Ohio will still remain under the domination of the state legislature.' " *Ohio Assn. of Pub. School Emps. v. Twinsburg*, 36

Ohio St.3d 180, 182 (1988), quoting *Fitzgerald v. Cleveland*, 88 Ohio St. 338, 380 (1913) (Wilkin, J., concurring).

{¶ 40} However, there are exceptions to the prohibition against state interference with municipal local self-government.  At the same time the Ohio Constitution endowed municipalities with broad powers of local self-government, it also restricted some of those powers.  *Cincinnati Bell Tel. Co.* at 605; *accord Dies Elec. Co. v. Akron*, 62 Ohio St.2d 322, 325 (1980), quoting *State ex rel. Gordon v. Rhodes*, 156 Ohio St. 81, 88 (1951) ("[T]he powers granted under Section 3 of Article XVIII are subject to other 'restrictions or limitations contained in any other provision in the Constitution.' "); *Whitman* at 65 (holding that the Home Rule Amendment "grant[ed] municipalities sovereignty in matters of local self-government, limited only by other constitutional provisions").  Regarding the municipal power to tax, two different constitutional provisions provide the General Assembly with the ability to curb the municipalities' authority.  *New York Frozen Foods, Inc.* at ¶ 29; *Cincinnati Bell Tel. Co.* at 602, 605.  First, Article XIII, Section 6 states that "[t]he general assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation * * * so as to prevent the abuse of such power."  Second, Article XVIII, Section 13 provides that "[l]aws may be passed to limit the power of municipalities to levy taxes * * * for local purposes."

{¶ 41} With the authority granted by these two constitutional provisions, the General Assembly may enact legislation designed to limit municipalities' exercise of local self-government in matters of taxation.  *State ex rel. Dayton v. Bish*, 104 Ohio St. 206, 215 (1922) (holding that "in matters of taxation," the Ohio Constitution has "subjected the municipalities of this state to the absolute control of the general assembly"); *State ex rel. Toledo v. Cooper*, 97 Ohio St. 86 (1917), paragraph two of the syllabus ("The power of all municipalities to levy taxes may be limited or restricted by general laws.  Such limitations or restrictions are warranted by Section 6, Article XIII * * * and by Section 13, Article XVIII * * *.").  However, when determining the constitutionality of such legislation, courts must interpret "the specific limiting power of the General Assembly so that it does not engulf the general power of taxation delegated to the municipalities."  *Cincinnati Bell Tel. Co.* at 606-07.

{¶ 42} The trial court determined that Section 13 of Article XVIII empowered the General Assembly to enact R.C. 718.80 through 718.95. Plaintiffs argue that the trial court erroneously construed Article XVIII, Section 13 by interpreting the word "levy" too broadly. According to plaintiffs, "to levy" solely means "to impose." In R.C. 718.80 through 718.95, the State does not preclude municipalities from imposing the net profit tax but, instead, limits their ability to collect and administer that tax for all taxpayers. Thus, plaintiffs argue that the power to limit taxation granted in Article XVIII, Section 13 does not permit the enactment of R.C. 718.80 through 718.95. Plaintiffs contend that the General Assembly has overstepped the confines of its authority under Article XVIII, Section 13 and invaded an area of local self-government allocated to the municipalities.

{¶ 43} Addressing this argument requires this court to construe the meaning of the word "levy." Generally, in construing the Ohio Constitution, courts apply the same rules of construction that they apply in construing statutes. *Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 146 Ohio St.3d 356, 2016-Ohio-2806, ¶ 16; *Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, ¶ 13. In endeavoring to determine the intent of the drafters, courts first examine the language of the provision itself. *Toledo City School Dist. Bd. of Edn.* at ¶ 16; *Wilson* at ¶ 13. If a word is not defined in the Constitution, courts imbue that word with its common, ordinary meaning. *Toledo City School Dist. Bd. of Edn.* at ¶ 16; *State ex rel. King v. Summit Cty. Council*, 99 Ohio St.3d 172, 2003-Ohio-3050, ¶ 35.

{¶ 44} Like the Home Rule Amendment, Section 13 of Article XVIII was drafted by the delegates of the 1912 Constitutional Convention and subsequently approved by voters. We thus turn to dictionaries published in the early twentieth century to determine the common, ordinary meaning of "levy," a word not defined in the Constitution. At the time Article XVIII, Section 13 was written, the definition of "levy" included "[t]o raise or collect by assessment; as, to *levy* taxes, toll, tribute, or contributions." (Emphasis sic.) *Webster's Unabridged Dictionary* 768 (1911). Alternatively, "to levy" meant "[t]o impose or assess (a tax) on property and collect it under authority of law." 1 *Funk & Wagnalls' Standard Dictionary of the English Language* 1024 (1906).

{¶ 45} From these definitions, we deduce that the General Assembly's authority over municipalities' power to levy taxes extends beyond limiting the imposition of taxes. By granting the General Assembly the authority to limit municipalities' power to levy taxes,

Article XVIII, Section 13 endows the General Assembly with the capability to circumscribe the imposition, raising, and collection of a municipal tax.

{¶ 46} Additionally, the history of Article XVIII, Section 13 extinguishes any doubt that the drafters interpreted "levy" more expansively than plaintiffs do. The delegates of the 1912 Constitutional Convention assigned the task of drafting home-rule related provisions to the committee on municipal government. During a meeting of all delegates, George W. Knight, a member of that committee, introduced the provision that became Article XVIII, Section 13 and answered questions about it. At that time, the proposed provision read, "The general assembly shall have authority to limit the power of municipalities to levy taxes * * * for local purposes." 2 *Proceedings and Debates of the Constitutional Convention of the State of Ohio*, 1451 (1912), available at www.supremecourt.ohio.gov/LegalResources/LawLibrary/resources/day64.pdf (accessed Jan. 25, 2019). Knight and Hiram D. Peck, a delegate from Hamilton County, engaged in the following colloquy:

> MR. PECK: * * * You leave to [the General Assembly] the power to limit, which might apply to the amount and not to the mode of collecting [tax].
>
> MR. KNIGHT: It was not so intended and I doubt if the language would bear that interpretation.
>
> MR. PECK: I think it would be bad to confer local self-government of that sort.
>
> MR. KNIGHT: In the machinery for collecting taxes?
>
> MR. PECK: Yes * * *. The machinery for collecting taxes in this state is very perfect and so admitted by everybody.
>
> MR. KNIGHT: And the committee is of the opinion that [the proposed provision] do[es] not interfere with it.

*Id.* Based upon this exchange, we conclude that the drafters of Article XVIII, Section 13 contemplated that it gave the General Assembly the authority to control "the machinery" for collecting municipal taxes, not just the imposition of such taxes.

{¶ 47} Finally, in the sole decision addressing the meaning of "levy" as used in Section 13 of Article XVIII, the First District Court of Appeals concluded that Section 13

gives the General Assembly the absolute authority to limit the power of municipalities to impose, collect, and administer municipal taxes. *Cincinnati Imaging Venture v. Cincinnati*, 116 Ohio App.3d 1 (1st Dist.1996), syllabus. In *Cincinnati Imaging Venture*, the appellants challenged the constitutionality of a state statute requiring municipalities to pay interest on a municipal income tax refund. The appellants argued that the state statute transcended the authority reserved to the General Assembly under Section 13 of Article XVIII, asserting that "while Section 13, Article XVIII permits the General Assembly to limit the levy of taxes by municipalities, it does not allow the General Assembly to interfere with local administration and regulation of lawfully levied taxes." *Id.* at 3. According to the appellants, the imposition of interest on overpaid taxes was "a matter of the administrative and regulatory authority reserved to the city." *Id.*

{¶ 48} After reviewing the text of Article XVIII, Section 13, the court of appeals concluded that "[i]t is difficult to interpret this language, granting to the General Assembly the absolute right to limit the power of municipalities to impose taxes, as allowing these same municipalities the unfettered right to regulate the levy and collection of those taxes." *Id.* at 4. Thus, the court found the challenged administrative measure a constitutional limitation on the municipality's taxing authority.

{¶ 49} In arguing that "levy" does not include collection or administration, the Athens plaintiffs point this court to *State ex rel. Keller v. Forney*, 108 Ohio St. 463 (1923). In that case, the Supreme Court of Ohio interpreted the phrase "laws providing for tax levies" as it appears in Article II, Section 1d of the Ohio Constitution. Not only does *Keller* focus on a different constitutional provision, its analysis turns on the word "providing" not "levies." Consequently, we find *Keller* of no consequence to the resolution of this case.

{¶ 50} Based on the common meaning of "levy," the drafters' interpretation of Article XVIII, Section 13, and relevant precedent, we conclude that Article XVIII, Section 13 permits the General Assembly to enact legislation limiting municipalities' power to impose, collect, and administer taxes. Thus, because the provisions of R.C. 718.80 through 718.95 limit municipalities' ability to collect and administer net profit taxes, those provisions do not violate the Home Rule Amendment.

{¶ 51} The Athens plaintiffs also attack uncodified Section 803.100(B) of H.B. 49, which provides that "[i]n accordance with division (A) of section 718.04 of the Revised

Code, each municipal corporation shall adopt, by ordinance or resolution, the provisions of sections 718.80 [through] * * * 718.95 of the Revised Code on or before January 31, 2018." The Athens plaintiffs contend that uncodified Section 803.100(B) is an unconstitutional attempt to dictate municipalities' legislative function, which is a power of local self-government. We reject this argument. Because Article XVIII, Section 13 permits the General Assembly to limit the municipalities' power to levy taxes, the General Assembly can require municipalities to enact legislation that accomplishes that aim. Therefore, uncodified Section 803.100(B) is a constitutional exercise of the General Assembly's authority under Article XVIII, Section 13.

{¶ 52} Finally, we turn to plaintiffs' specific challenge to the constitutionality of R.C. 718.80(C)(3) and 718.85(B) under the Home Rule Amendment. R.C. 718.80(C)(3) authorizes the tax commissioner to withhold 50 percent of the net-profit-tax revenues due to a municipality if the municipality does not timely submit specified information to the tax commissioner. R.C. 718.85(B) directs the treasurer to retain one-half percent of the net profit taxes paid to the State as a fee for the collection and administration services provided. Plaintiffs argue that these provisions unconstitutionally empower the State to confiscate municipal funds. We disagree. Both provisions at issue are part of a broader statutory scheme to collect and administer net profit taxes, and both provisions enable and advance the collection and administration of net profit taxes. Consequently, as integral components of a statutory scheme constitutionally enacted to limit the power of municipalities to collect and administer taxes, R.C. 718.80(C)(3) and 718.85(B) are also constitutional under Article XVIII, Section 13 of the Ohio Constitution.

{¶ 53} Having dealt with the constitutionality of H.B. 49 under the Home Rule Amendment, we now consider the constitutionality of H.B. 5 under the same amendment. The Athens plaintiffs raise one argument regarding H.B. 5: it unconstitutionally eliminated municipal taxing authority. This argument arises from the amendments to R.C. 715.013, which now reads:

> (A) Except as otherwise expressly authorized by the Revised Code, no municipal corporation shall levy a tax that is the same or similar to a tax levied under Chapter 322., 3734., 3769., 4123., 4141., 4301., 4303., 4305., 4307., 4309., 5707., 5725., 5726., 5727., 5728., 5729., 5731., 5735., 5736., 5737., 5739., 5741., 5743., 5747., 5749., or 5751. of the Revised Code.

(B) This section does not prohibit a municipal corporation from levying an income tax or withholding tax in accordance with Chapter 718. of the Revised Code, or a tax on any of the following:

(1) Amounts received for admission to any place;

(2) The income of an electric company or combined company, as defined in section 5727.01 of the Revised Code;

(3) On and after January 1, 2004, the income of a telephone company, as defined in section 5727.01 of the Revised Code.

{¶ 54} A plain reading of this section reveals that it does not prohibit municipal corporations from levying taxes. It does restrict municipalities' ability to tax income by requiring municipalities to levy that tax in accordance with the limitations in R.C. Chapter 718. *See also* R.C. 718.04(A) ("Notwithstanding division (A) of section 715.013 of the Revised Code, a municipal corporation may levy a tax on income and a withholding tax if such taxes are levied in accordance with the provisions and limitations specified in [R.C. Chapter 718]."). However, as we concluded above, the General Assembly may constitutionally limit municipalities' power to levy taxes. While H.B. 5 increases regulation of the municipal power of taxation, it does not eliminate that power as the Athens plaintiffs claim. Accordingly, the General Assembly did not violate the Home Rule Amendment in enacting H.B. 5.

{¶ 55} We next turn to the Athens plaintiffs' arguments that the challenged provisions of H.B. 49 violate other provisions of the Ohio Constitution. First, the Athens plaintiffs argue that the challenged provisions of H.B. 49 unconstitutionally impair the contracts many municipalities have executed with third-party tax administrators. Under these sorts of contracts, a municipality hires an entity, such as the Regional Income Tax Agency ("RITA") or another municipality, to collect and administer the municipality's income tax. The Athens plaintiffs contend that the State's implementation of a centralized system for the collection and administration of net profit taxes will cause the contracting municipalities to lose the benefits of their bargains with third-party tax administrators.

{¶ 56} Pursuant to Article II, Section 28 of the Ohio Constitution, "[t]he general assembly shall have no power to pass * * * laws impairing the obligation of contracts." To determine whether a statute violates Article II, Section 28, a court must first consider

whether a state law has, in fact, substantially impaired a contractual relationship. *Doe v. Ronan*, 127 Ohio St.3d 188, 2010-Ohio-5072, ¶ 16; *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, ¶ 37. A party's failure to produce a contract or a detailed description of the terms of a contract defeats a court's ability to adjudge impairment. *Util. Serv. Partners, Inc.* at ¶ 38-40. "Without evidence of the 'obligation of contracts,' it is impossible to determine whether they have been 'impaired.' " *Id.* at ¶ 39.

{¶ 57} Here, the record contains neither the contracts at issue nor a detailed description of those contracts' terms. Accordingly, the Athens plaintiffs have not proven a violation of Article II, Section 28 of the Ohio Constitution.

{¶ 58} The Athens plaintiffs also argue that the challenged provisions of H.B. 49 deprive municipalities of property without remedy by due course of law in violation of Article I, Section 16 of the Ohio Constitution. For the most part, the resolution of this argument turns upon whether the Athens plaintiffs have standing to assert it. " 'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* 1442 (8th Ed.2004). If a party lacks standing, a court will not decide the merits of its dispute. *Util. Serv. Partners, Inc.* at ¶ 49.

{¶ 59} Here, the Athens plaintiffs do not claim to have due-course rights but, instead, assert standing based on their citizens' due-course rights. Courts view such third-party standing unfavorably. *Id.* However, a party may litigate using third-party standing if it: (1) suffers its own injury in fact, (2) possesses a sufficiently close relationship with the person who possesses the right, and (3) shows some hinderance that stands in the way of its seeking relief. *E. Liverpool v. Columbiana Cty. Budget Comm.*, 114 Ohio St.3d 133, 2007-Ohio-3759, ¶ 22.

{¶ 60} The Athens plaintiffs stumble on the first element of the test. An injury in fact is " 'an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not hypothetical or conjectural.' " *Cramer v. Javid*, 10th Dist. No. 10AP-199, 2010-Ohio-5967, ¶ 11, quoting *Bourke v. Carnahan*, 163 Ohio App.3d 818, 2005-Ohio-5422, ¶ 10 (10th Dist.). A threatened injury can qualify as an injury in fact for standing purposes. *Hamilton v. Ohio Dept. of Health*, 10th Dist. No. 14AP-1035, 2015-

Ohio-4041, ¶ 19. However, the " 'threatened injury must be *certainly impending* to constitute injury in fact' and [ ] '[a]llegations of *possible* future injury' are not sufficient." (Emphasis sic.) *Clapper v. Amnesty Internatl. USA*, 568 U.S. 398, 409 (2013), quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

{¶ 61} In the case at bar, the Athens plaintiffs contend that the challenged provisions of H.B. 49 threaten injury to municipal treasuries for two reasons. First, the Athens plaintiffs fear that the tax commissioner will approve refunds or alternative apportionments that they themselves would not approve, thus decreasing the revenue they would otherwise derive from net profit taxes. While the Athens plaintiffs have identified possible future injury, they have not shown that that injury is certainly impending. At this point, the alleged injury is merely speculative. Consequently, the Athens plaintiffs have not established an injury in fact and, thus, cannot rely on third-party standing to pursue their due-course-of-law challenge to the refund and apportionment provisions of H.B. 49.

{¶ 62} Second, the Athens plaintiffs complain that the State will deprive them of revenue by appropriating one-half percent of the net-profit-tax revenues the State collects. Unlike the first alleged injury, the State's retention of funds is certainly impending, so the municipalities have demonstrated an injury in fact on that basis. However, the Athens plaintiffs have no need to establish third-party standing. By their due-course challenge to the half-percent fee, the Athens plaintiffs want to be accorded a meaningful opportunity to be heard regarding their deprivation of property. This litigation is the Athens plaintiffs' meaningful opportunity. Through this lawsuit, the Athens plaintiffs have challenged the legality of the half-percent fee and sought relief from it by due course of law. Thus, regarding the half-percent fee, the Athens plaintiffs have received the protection of Article I, Section 16 of the Ohio Constitution, regardless of whether they have any direct claim to that protection.

{¶ 63} In the Athens plaintiffs' final constitutional argument, they contend that the challenged provisions of H.B. 49 will effect an unconstitutional taking under Article I, Section 19 of the Ohio Constitution. However, the Athens plaintiffs' takings argument consists of only a bald statement that an unconstitutional taking will occur. The Athens plaintiffs, therefore, have failed to satisfy their burden to affirmatively demonstrate error. *See State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94 (10th Dist.)

("[T]he burden of affirmatively demonstrating error on appeal rests with the party asserting error. * * * It is [ ] not appropriate for this court to construct the legal arguments in support of an appellant's appeal."). Consequently, we reject the Athens plaintiffs' takings challenge.

{¶ 64} In their last claim, the Athens plaintiffs maintain that the challenged provisions of H.B. 49 convert municipal net-profit-tax revenues for use by the State. "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). Because Article XVIII, Section 13 of the Ohio Constitution authorizes the State to collect and administer municipal net profit taxes, the implementation of the challenged provisions does not result in conversion of municipal property. In short, the State's limited exercise of control over net-profit-tax revenues is neither wrongful nor violative of any property rights municipalities may have.

{¶ 65} As a final matter, we acknowledge the numerous policy arguments made by the parties and the amici curiae in their briefs. Each side tries to convince us of the rightness of their position in the policy debate over the State's forays into the collection and administration of municipal taxes. The judiciary, however, does not appraise legislative choices. " '[A] court has nothing to do with the policy or wisdom of a statute. * * * When the validity of a statute is challenged on constitutional grounds, the sole function of the court is to determine whether it transcends the limits of legislative power.' " *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, ¶ 20, quoting *State ex rel. Bishop v. Mt. Orab Village School Dist. Bd. of Edn.*, 139 Ohio St. 427, 438 (1942). We, therefore, will not address any of the parties' policy arguments.

{¶ 66} In conclusion, we find the challenged provisions of H.B. 49 and H.B. 5 constitutional. Accordingly, we overrule the Athens plaintiffs' first assignment of error and the Elyria plaintiffs' second assignment of error.

{¶ 67} In their second assignment of error, the Athens plaintiffs argue that we should reverse the denial of their motion for a preliminary injunction if we decide to remand this case to the trial court. Because a remand is not necessary, the Athens plaintiffs' second assignment of error is moot.

{¶ 68} For the foregoing reasons, we overrule the Elyria plaintiffs' first and second assignments of error. We also overrule the Athens plaintiffs' first assignment of error. Our resolution of the Athens plaintiffs' first assignment of error renders their second assignment of error moot, so we do not decide it. We affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶ 69} I feel that much of what the legislature did with respect to the collection of income taxes levied by municipal corporations makes sense. The parts of the legislation with which I disagree are the charging municipalities of one-half percent of all net profit taxes and allowing the state to keep as much as one-half of those taxes. No matter how you spin it or attempt to gloss over it, the state of Ohio is charging municipalities a tax. I do not believe the state of Ohio can legally tax municipalities. Nor do I believe the state of Ohio can legally seize and keep 50 percent of the net-profit tax due to a municipality, whether you call it a penalty or call it something else. I note that the state of Ohio now apparently has the sole power to decide if it can keep half of the tax revenue due to a city or municipality. An Ohio statute, passed by the Ohio legislature and signed by an Ohio governor, supposedly gives the state of Ohio the power to take large sums of income tax monies due cities and municipalities irrespective of local codes and ordinances. Apparently the legislature and the trial court feel that Home Rule does not apply in tax matters. I fear the majority of this court reinforces that feeling.

{¶ 70} The Supreme Court of Ohio has ignored the One-Subject Rule repeatedly, especially when laws are enacted at the end of a legislative session, commonly called a Lame Duck Session. The same is true when state budgets are being enacted. I doubt that the Supreme Court of Ohio will begin to enforce the One-Subject Rule any time soon, but I am willing to be proven wrong on that issue.

{¶ 71} In short, the cities and municipalities are right to contest this legislative action to allow the state to seize and keep large sums of local tax dollars. I am especially

not impressed by the attempt to avoid the clear requirements of the Home Rule Amendment.

{¶ 72} I dissent.

————————————