[Cite as *Ohioans for Concealed Carry v. Columbus*, 2019-Ohio-3105.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ohioans For Concealed Carry et al., | : | |
| Plaintiffs-Appellees/ Cross-Appellants, | : | No. 18AP-605 |
| | : | (C.P.C. No. 18CV-5216) |
| v. | : | (REGULAR CALENDAR) |
| City of Columbus, Ohio c/o City Attorney Zach M. Klein et al., | : | |
| Defendants-Appellants/ Cross-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on August 1, 2019

**On brief:** *Haynes Kessler Myers & Postalakis, Inc., David S. Kessler, Stephen P. Postalakis*, and *Eric B. Hershberger*; *James P. Sean Maloney*; *Barney DeBrosse, LLC*, and *Derek A. DeBrosse*; *Ronald Lemieux*, for plaintiffs-appellees/cross appellants. **Argued:** *David S. Kessler*.

**On brief:** *Zach Klein*, City Attorney, *Lara Baker-Morrish, Charles Campisano*, and *Richard N. Coglianese*; *Eric Tirschwell*, for defendants-appellants/cross-appellees. **Argued:** *Lara Baker-Morrish*.

**On brief:** *Jones Day, Benjamin C. Mizer*, and *Yvette McGee Brown*, for Amicus Curiae Giffords Law Center.

**On brief:** *Dave Yost*, Attorney General, *Steven T. Voigt, Jonathan R. Fulkerson*, and *Frederick D. Nelson*, for Amicus Curiae State of Ohio.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendants-appellants/cross-appellees, City of Columbus and Columbus City Attorney Zach M. Klein ("city attorney") (collectively "the City"), appeal the July 12, 2018 entry of the Franklin County Court of Common Pleas, which granted a permanent injunction enjoining enforcement of Columbus City Code ("C.C.C.") 2323.171 and denied injunctive relief as to enforcement of C.C.C. 2323.13. In this court, on January 18, 2019, the City filed a motion to vacate and remand, asserting a federal rule published by the Bureau of Alcohol, Tobacco, Firearms, and Explosives had "substantial repercussions" on the present matter requiring reversal for an initial determination in the trial court. For the following reasons, we reverse.

## I. History

{¶ 2} On June 21, 2018, plaintiffs-appellees/cross-appellants, Ohioans for Concealed Carry ("OCC"), Buckeye Firearms Foundation, Inc. ("BFF"), and Gary Witt (collectively "firearm plaintiffs"), filed against the City a complaint for injunction and declaratory relief, a motion for preliminary injunction, and motion for a temporary restraining order. In their complaint, firearm plaintiffs asserted C.C.C. 2323.13 and 2323.171, which were enacted by City of Columbus Ordinance 1116-2018, were unconstitutional and in violation of R.C. 9.68.[1]

---

[1] We note the explanation of the ordinance as set forth in the legislation report, which was attached as an exhibit to firearm plaintiffs' complaint, provides:

> The purpose of this ordinance is to reenact sections of the Columbus City Codes regarding weapons that were repealed after the Ohio Supreme Court ruled constitutional a statewide law that prevents municipalities from enacting laws regulating the possession, ownership, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. The ordinance conforms the reenacted city weapons code to state law and adds provisions for forfeiture of weapons used in the commission of specified offenses.

> The ordinance also enacts new section 2323.13 creating a weapons under disability provision that penalizes possession of a weapon if the offender has been convicted of a violent felony offense not currently covered by state code, violations of protection orders, and misdemeanor domestic violence.

> Finally, in light of recent events in Las Vegas, Nevada and Parkland, Florida, the ordinance enacts a provision to ban firearm accessories including bump stocks, bump-fire stocks, slide fires, accelerators and trigger cranks that accelerate the rate of fire of a firearm.

{¶ 3}   C.C.C. 2323.171, which governs unlawful possession of firearm accessories, provides:

> (A) No person shall knowingly acquire, have, carry, or use an illegal rate-of-fire acceleration firearm accessory.
>
> (B) Whoever violates this section is guilty of unlawful possession of a firearm accessory, a misdemeanor punishable by up to one year in jail with a mandatory minimum jail term of at least one hundred eighty (180) consecutive days during which mandatory jail term the defendant shall not be eligible for work release and up to a $1500 fine.
>
> (C) For the purposes of this section:
>
> (1) "Illegal rate-of-fire acceleration firearm accessory" means any trigger crank, a bump-fire device, or any part, combination of parts, component, device, attachment, or accessory, that is designed or functions to accelerate the rate of fire of a semi-automatic firearm but not convert the semi-automatic firearm into an automatic firearm. These include, but are not limited to, firearm accessories described or marketed as bump stocks, bump-fire stocks, slide fires, and accelerators.

C.C.C. 2323.13 provides for the offense of having weapons while under disability, a misdemeanor of the first degree.  In pertinent part, C.C.C. 2323.13 prohibits any person from knowingly acquiring, having, carrying, or using any firearm or dangerous ordinance, if the person has "been convicted of a misdemeanor offense of domestic violence."  C.C.C. 2323.13(A)(3).

{¶ 4}   On June 22, 2018, the trial court entered a temporary restraining order, enjoining the City from all enforcement activity associated with C.C.C. 2323.171 and 2323.13.  On June 22, 2018, the state of Ohio moved for leave to file an amicus curiae brief in support of a preliminary injunction.  On June 26, 2018, the trial court filed a decision and entry granting the state's motion for leave to file an amicus curiae brief.

{¶ 5}   On June 26, 2018, the City filed an answer.  On June 29, 2018, the City filed a memorandum in opposition to firearm plaintiffs' motion for preliminary injunction.  On June 29, 2018, the City filed a notice requesting an evidentiary hearing on the preliminary injunction and submitting that they "[did] not consent to combining the hearing for a preliminary injunction with the trial on the merits."  (June 29, 2018 Notice.)  On July 2,

2018, the City submitted supplemental exhibits in support of their memorandum in opposition to firearm plaintiffs' motion for preliminary injunction.

{¶ 6} On July 2, 2018, firearm plaintiffs filed a notice stating that no evidentiary hearing was needed on their motion for preliminary injunction. On July 6, 2018, firearm plaintiffs filed a reply to the City's memorandum in opposition to firearm plaintiffs' motion for preliminary injunction.

{¶ 7} On July 9, 2018, the trial court held a hearing on the motion for preliminary injunction. At the hearing, firearm plaintiffs introduced testimony from Jeff Steley, a private military contractor. The City introduced testimony from Yasmine Makridis, a city of Columbus prosecutor working in the domestic violence unit. On July 12, 2018, the trial court issued an entry granting a permanent injunction enjoining enforcement of C.C.C. 2323.171 and denying injunctive relief regarding enforcement of C.C.C. 2323.13.

## II. Assignments of Error

{¶ 8} The City appeals and assigns five errors for our review:

> [I.] The trial court erred by finding [firearm] Plaintiffs had standing to bring the instant action.
>
> [II.] The trial court erred by *de facto* consolidating the final trial on the merits on [firearm] Plaintiffs' claim for a permanent injunction/declaratory judgment with the hearing on [firearm] Plaintiffs' application for a preliminary injunction as to their challenge to C.C.C. 2323.171 pursuant to R.C. 9.68 without providing notice of the same and over the express objection of the City.
>
> [III.] The trial court erred by entering a final order conclusively deciding the issue of whether C.C.C. 2323.171 is in conflict with R.C. 9.68 as a matter of law at a hearing on a motion for a preliminary injunction even though the limited and incomplete record evinced conflicting evidence as to a disputed matter of fact and the City expressly objected to a waiver of trial on the merits.
>
> [IV.] The trial court erred by qualifying an expert witness and allowing his testimony to be offered into evidence over the City's objection and despite Plaintiffs' failure to provide a copy of any expert witness report.

[V.] The trial court erred in finding C.C.C. 2323.171 to be in conflict with R.C. 9.68 in contravention of the Ohio Constitution's Home Rule Amendment.

{¶ 9} On cross-appeal, firearm plaintiffs assign two errors for our review:

[I.] The trial court erred in failing to find that the City was liable to pay attorney's fees to [firearm plaintiffs] and hold a hearing on the amount of the fees.

[II.] The trial court erred in finding the Weapons Disability Ordinance (C.C.C. §2323.13) was a constitutional enactment, a lawful exercise of the City's police powers, and not in conflict with [R.C.] 9.68.

## III. First Assignment of Error—Standing

{¶ 10} In its first assignment of error, the City asserts the trial court erred by determining firearm plaintiffs had standing to bring the instant action.

### A. General Principles of Standing

{¶ 11} In general terms, "standing" is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Black's Law Dictionary* 1625 (10th Ed.2014). *See Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27. Article IV, Section 4(B) of the Ohio Constitution provides that courts of common pleas "shall have such original jurisdiction over all justiciable matters." "A matter is justiciable only if the complaining party has standing to sue." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 11, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 41. Thus, "[b]efore an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue." *Ohio Pyro* at ¶ 27.

{¶ 12} In order to establish standing, litigants traditionally must demonstrate, at a minimum, that "they have suffered '(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.' " *ProgressOhio.org* at ¶ 7, quoting *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 22. "[S]tanding does not depend on the merits of the plaintiff's contention that particular conduct is illegal or unconstitutional," but, instead, "turns on the nature and source of the claim asserted by the plaintiffs." *Moore* at ¶ 23, citing *Warth v. Seldin*, 422

U.S. 490, 500 (1975). Standing is not conferred on an entire case, but " '[r]ather, "a plaintiff must demonstrate standing for each claim he [or she] seeks to press" and " 'for each form of relief' " that is sought.' " *Preterm-Cleveland, Inc. v. Kasich*, 153 Ohio St.3d 157, 2018-Ohio-441, ¶ 30, quoting *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734 (2008), quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

{¶ 13} Because the determination of whether a party has established standing to bring an action is a question of law, we apply a de novo standard of review. *Moore* at ¶ 20, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶ 23. Firearm plaintiffs assert they established standing under several grounds. We begin by addressing whether firearm plaintiffs meet the requirements for statutory taxpayer standing.

**B. Statutory Taypayer Standing**

{¶ 14} R.C. 733.56 authorizes the village solicitor or city director of law to seek an "injunction to restrain the [1] misapplication of funds of the municipal corporation, [2] the abuse of its corporate powers, [3] or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it, or which was procured by fraud or corruption." The abuse of corporate powers has been described as "the unlawful exercise of powers possessed by the corporation, as well as the assumption of power not conferred." (Emphasis omitted.) (Citation omitted.) *Porter v. Oberlin*, 1 Ohio St.2d 143, 146 (1965). The solicitor or city director of law may also seek specific performance or mandamus pursuant to R.C. 733.57 and 733.58.

{¶ 15} If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his or her own name, on behalf of the municipal corporation. R.C. 733.59. R.C. 733.61 provides, in pertinent part, that "[i]f the court hearing a case under section 733.59 of the Revised Code is satisfied that the taxpayer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands." "Taxpayer actions, involving an abuse of corporate powers, are carefully

restricted by court decisions." *Columbus ex rel. Willits v. Cremean*, 27 Ohio App.2d 137, 149 (10th Dist.1971).

{¶ 16} Here, firearm plaintiffs asserted in their complaint that the city attorney failed, upon their written request, to seek to enjoin the enforcement of C.C.C. 2323.171 and 2323.13, which they alleged violated R.C. 9.68. Firearm plaintiffs alleged the challenged statutes: (1) "ha[ve] resulted in, or is imminently likely to result in, the misapplication (and an inappropriate and unlawful expenditure) of funds of the City, by virtue of efforts by the City to advertise and promote the Ordinances, enforce the Ordinances, implement the Ordinances and defend the Ordinances"; (2) "are an abuse of the City's home rule power as repeatedly stated by the Ohio Supreme Court"; and (3) "have involved, or are reasonably likely to involve, execution of contracts with third parties concerning the advertisement, enforcement, and implementation of the unlawful provisions therein, including but not limited to contracts for public defenders for indigent defendants charged with violating the Ordinances." (Compl. at 5.) Firearm plaintiffs alleged they "seek to enforce the public right of the people to keep and bear arms and all peripheral rights guaranteed to them by the Constitution of Ohio, the Constitution of the United States and R.C. §9.68." (Compl. at 5.) Based on the above, firearm plaintiffs assert Witt had statutory taxpayer standing under R.C. 733.59 to pursue claims for declaratory and injunctive relief and, therefore, OCC and BFF had associational standing to pursue such claims. We begin by considering the nature of the relief afforded by a claim brought under R.C. 733.59.

**1. Relief Available Under R.C. 733.59**

{¶ 17} Here, firearm plaintiffs seek declaratory and injunctive relief. As previously noted, R.C. 733.56, 733.57, and 733.58 provide for a village solicitor or city director of law to commence an action for an injunction, specific performance, or mandamus. If the village solicitor or city director of law fails to make any application provided in R.C. 733.56 to 733.58, a taxpayer may bring an action under R.C. 733.59 on behalf of the municipal corporation. However, none of the statutes in question provide for the commencement of an action for declaratory judgment. Therefore, we find firearm plaintiffs cannot establish standing for declaratory relief under R.C. 733.59. *McBee v. Toledo*, 6th Dist. No. L-13-1101, 2014-Ohio-1555, ¶ 9 (finding that R.C. 733.56 to 733.59 do not authorize the solicitor, law director, city attorney, or taxpayer to seek declaratory relief); *State ex rel. Longville v.*

*Akron*, 9th Dist. No. 25354, 2013-Ohio-1161, ¶ 10 (finding that "[i]n bringing a properly filed statutory taxpayer action" pursuant to R.C. 733.59, "R.C. 733.56, R.C. 733.57, and R.C. 733.58 provide the taxpayer with the option of filing: (1) an injunction, (2) for specific performance, or (3) a writ of mandamus").  *But see Cincinnati ex rel. Smitherman v. Cincinnati*, 188 Ohio App.3d 171, 2010-Ohio-2768, ¶ 19-20 (1st Dist.).  As injunctive relief is available in a statutory taxpayer claim under R.C. 733.56 and 733.59, we next consider whether Witt had statutory taxpayer standing to pursue a claim for injunctive relief.

## 2. Whether Witt Established Statutory Taxpayer Standing for Injunctive Relief Under R.C. 733.59

{¶ 18} In its brief on appeal, the City agrees that based on the allegations in the complaint, Witt "fulfill[ed] the statutory requirements of R.C. 733.59." (The City's Merit Brief at 17.)  Nevertheless, the City asserts Witt lacks standing to bring a taxpayer action because he failed to allege an injury different from that of the general public.  Specifically, the City argues Witt failed to allege that "his property rights were in jeopardy," or that "he owned a bump stock or * * * intended to purchase one."  (The City's Merit Brief at 18.)

{¶ 19} The Supreme Court of Ohio has construed the term "taxpayer" as used in R.C. 733.59 as " 'contemplat[ing] and includ[ing] any person who, in a private capacity as a citizen, elector, freeholder or taxpayer*, volunteers to enforce a right of action on behalf of and for the benefit of the public*, and any such person is subject to the conditions imposed by that section, unless waived.' "  (Emphasis added.)  *State ex rel. White v. Cleveland*, 34 Ohio St.2d 37, 40 (1973), quoting *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1 (1966), paragraph two of the syllabus.  Thus, in order to maintain an action under R.C. 733.59, in addition to meeting the statutory requirements, the " 'aim [of the taxpayer] must be to enforce a public right, regardless of any personal or private motive or advantage.' "  *State ex rel. Fisher v. Cleveland*, 109 Ohio St.3d 33, 2006-Ohio-1827, ¶ 12, quoting *State ex rel. Caspar v. Dayton*, 53 Ohio St.3d 16, 20 (1990).

{¶ 20} In *White*, the Supreme Court considered whether the action was properly brought as a taxpayer's action under R.C. 733.59.  In its analysis, the court noted that " 'where the question is one of public right and the object of the mandamus is to procure the enforcement of public duty, the people are regarded as the real party.' "  *White* at 40, quoting *Nimon* at 4.  The court recognized that "R.C. 149.43 establishes a public right to

the inspection and copying of public records and imposes upon municipal corporations the mandatory duty to permit same."  *White* at 40.  Because the appellant refused to comply with that mandatory duty, "the appellees, regardless of any private or personal benefit, have enforced a right of action on behalf of and for the benefit of the general public."  *White* at 40.  Therefore, the court found the action was "properly categorized as a 'taxpayer's action.' "  *White* at 40.

{¶ 21}  In *State ex rel. Cater v. N. Olmsted*, 69 Ohio St.3d 315 (1994), the Supreme Court considered whether Cater had taxpayer standing to bring a mandamus action seeking to compel North Olmstead to reinstate the chairman of the North Olmsted Civil Service Commission, who was a friend and political ally of Cater.  North Olmstead argued that Cater lacked standing because "the purpose of Cater's suit was not, as he claims, to enforce the public's right to proper execution of its charter removal provisions requiring a two-thirds vote of elected council members," but rather to "gain [the chairman's] reinstatement, and that this private motive is not actionable under R.C. 733.59."  *Cater* at 322.  The court found that Cater's assertion of a public right to "the services of a public official who is purportedly performing in accordance with charter provisions * * * represents action taken on behalf of the public, and is a sufficient basis upon which to institute a taxpayer action, notwithstanding that Cater's motives may not have been purely philanthropic."  *Cater* at 323.  Thus, even though Cater himself had not suffered an injury distinct from that of the general public, the court found he had standing to pursue his claim as a taxpayer action.

{¶ 22}  In support of its argument that standing requires demonstration of an injury different from that of the general public, the City points to *State ex rel. Masterson v. Ohio State Racing Comm.*, 162 Ohio St. 366 (1954).  In *Masterson*, the Supreme Court found the relator lacked standing to sue because he did not claim to be in the special class of taxpayers from whom the revenues in question were collected.  In its arguments, however, the City fails to appreciate that *Masterson* concerned a taxpayer claim under common law. Indeed, the City omitted from its analysis a key portion of the court's holding, which stated in its entirety: "It is equally fundamental that *at common law and apart from statute*, a taxpayer can not bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are put in jeopardy." (Emphasis added.)  *Masterson* at 368. Furthermore,

the Supreme Court stated "it is important to observe that the relator taxpayer makes no claim that he is authorized by statute to institute this action" and, therefore, "[t]he question * * * is reduced to whether the relator possesses such authority [to sue] under the principles of the common law." *Masterson* at 367-68. Thus, we cannot agree that *Masterson* supports the City's contention in a statutory taxpayer action, as here.

{¶ 23} The City also cites *Preterm-Cleveland* for the proposition that " ' "the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general." ' " *Preterm-Cleveland* at ¶ 21, quoting *Ohio Trucking Assn. v. Charles*, 134 Ohio St.3d 502, 2012-Ohio-5679, ¶ 5, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-70 (1999). Similar to *Masterson*, the plaintiff in *Preterm-Cleveland* did not assert a statutory taxpayer claim and did not argue that it established standing by seeking to enforce a public right.[2] As a result, we cannot agree with the City's contention that *Preterm-Cleveland* is dispositive of the issue at hand.

{¶ 24} The City also asserts the "taxpayer statute cannot be read in such a manner as to allow any resident of a municipality the right to file litigation to challenge any decision a municipality undertakes simply because the taxpayer is a resident of the city or village" because "[s]uch a reading would violate the case or controversy requirements of Art. IV Sec 4(B) of the Ohio Constitution." (The City's Merit Brief at 18, fn. 2.) We agree with the City that a party seeking to maintain a statutory taxpayer action must still establish standing. We also caution that, as under traditional principles of standing, mere " 'ideological opposition to a program or legislative enactment is not enough' " to establish standing in a statutory taxpayer action. *State ex rel. Walgate v. Kasich*, 147 Ohio St.3d 1, 2016-Ohio-1176, ¶ 18, quoting *ProgressOhio.org* at ¶ 1.

{¶ 25} However, unlike under traditional principles of standing, a party seeking to bring a statutory taxpayer case must, in addition to satisfying the statutory requirements,

---

[2] Rather, the plaintiff in *Preterm-Cleveland* challenged the biennial budget bill violated the Single Subject Clause of Article II, Section 15(D) of the Ohio Constitution because it included provisions allegedly unrelated to the state budget. Indeed, the discussion of standing in *Preterm-Cleveland* appears to be specific to parties alleging a violation of the Single Subject Clause. *See Preterm-Cleveland* at ¶ 30 (holding that "a party challenging multiple provisions in an enactment of the General Assembly as violating the Single Subject Clause must prove standing as to each provision the party seeks to have severed from the enactment by demonstrating it suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the general public because of each provision").

demonstrate it is seeking to enforce a public right. *Fisher* at ¶ 12. Thus, although it is well-established that under "common-law standing, a party wishing to sue must have a 'direct, personal stake' in the outcome of the case," we are not persuaded that such a requirement exists in a statutory taxpayer action. *Walgate* at ¶ 18, quoting *ProgressOhio.org* at ¶ 1. *See Smitherman* at ¶ 20 (dismissing arguments that taxpayer lacked standing to bring suit under R.C. 733.59 because he had no personal stake in the case's outcome where taxpayer sought to "enforce a public right to the proper exercise of the city's corporate powers"); *McBee* at ¶ 12 (finding that "common law requirements for standing do not apply when standing is conferred by statute"); *C. E. Angles, Inc. v. Evans*, 10th Dist. No. 82AP-635 (Dec. 14, 1982) (finding that "[i]f these sections [providing for statutory taxpayer actions relating to counties] apply to [the plaintiff], he is not required to meet the common law tests concerning the standing of taxpayers, insofar as they are dispensed with by the statutes").

{¶ 26} Having found that, in a statutory taxpayer action, we need not consider the common law requirement of a direct, personal stake in the case, we next consider whether the action had the aim of enforcing a public right. In analyzing a statutory taxpayer action against a county entity,[3] the Supreme Court has stated that " '[t]here are serious objections against allowing mere interlopers to meddle with the affairs of the state, and it is not usually allowed *unless under circumstances when the public injury by its refusal will be serious.*' " (Emphasis sic.) (Citations and quotations omitted.) *State ex rel. Teamsters Local Union No. 436 v. Bd. of Cty. Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, ¶ 12, quoting *Sheward* at 472.[4] However, where the assertion of public protection is a mere pretext for the taxpayer's individual benefit, the taxpayer will not have standing. *Teamsters* at ¶ 12 ("[W]hen a remedy being pursued is one that is merely for the individual taxpayer's benefit, the taxpayer cannot claim that he is vindicating a public right, and he will not have standing to pursue a taxpayer action."); *Caspar* at 20 (finding cause was not taxpayer action because "action to compel fringe benefits for [police officers'] own benefit" did not represent the aim

---

[3] *See* R.C. 309.12 et seq.
[4] We note that in *Teamsters*, a statutory taxpayer action against a county entity, pursuant to R.C. 309.12, the Supreme Court incorporated its pronouncements from *Sheward*, an action brought under the common law public right doctrine of standing. *See Teamsters* at ¶ 12, quoting *Sheward* at 471 (stating that "only 'when the issues sought to be litigated are of great importance and interest to the public [may they] be resolved in a form of action that involves no rights or obligations peculiar to named parties' ").

of enforcing a public right, and because "right to vacation pay" was not a " 'public' right"); *Home Builders Assn. of Dayton v. Lebanon*, 167 Ohio App.3d 247, 2006-Ohio-595, ¶ 54 (12th Dist.) (finding homebuilders association lacked statutory taxpayer standing because it was not seeking to enforce a public right, but rather "the interests pursued by the homebuilders were primarily related to a narrow class of citizen/taxpayers who were required to pay the telecommunications fee"); *State ex rel. Countryside Investors, LLC v. Bd. of Commrs.*, 7th Dist. No. 13 CA 885, 2015-Ohio-4344, ¶ 36.

{¶ 27} In *Fisher*, the Supreme Court considered whether the relators satisfied the public right requirement where they sought to enjoin the city from requiring municipal employees to submit copies of their tax returns in order to prove they satisfied the city's residency requirement. Because the "alleged abuse of the corporate power" implicated the public's interest as voters, the public's interest as potential employees, and the "public['s] * * * interest in seeing the continued employment of firefighters and police officers it has trained with taxpayer dollars and who have gained invaluable experience in their community," the court found the matter was a proper subject of a taxpayer action. *Fisher* at ¶ 17-18.

{¶ 28} In *Teamsters*, the Supreme Court considered whether a union was vindicating a public right such that it had standing to initiate a taxpayer suit. The court found the union "failed to allege any concrete taxpayer interest that is threatened" by an allegedly statutorily noncompliant county resolution, but instead "merely allege[d] that the existence of a statutorily noncompliant county resolution constitutes an injury in and of itself." *Teamsters* at ¶ 16. The court stated that "[a]lthough it is well established that taxpayers 'may judicially contest the validity of any official act which directly affects prejudicially their rights as taxpayers by increasing the burden of taxes or otherwise,' taxpayers cannot contest official acts 'merely upon the ground that they are unauthorized and invalid.' " *Teamsters* at ¶ 16, quoting *Pierce v. Hagans*, 79 Ohio St. 9, 22 (1908). As a result, the court held that "without more than the bare claim that the county has failed to comply" with the statute in question, the court found the union failed to establish standing. *Teamsters* at ¶ 16.

{¶ 29} The City asserts "there is no general public right Witt is seeking to enforce" because "there has never been an allegation or an assertion that anything involved in this

case infringes on the constitutional or statutory rights of the public." (The City's Reply Brief at 4.) Yet, as noted above, firearm plaintiffs asserted they "seek to enforce the public right of the people to keep and bear arms and all peripheral rights guaranteed to them by the Constitution of Ohio, the Constitution of the United States of America and R.C. §9.68." (Compl. at 5.) Additionally, firearm plaintiffs alleged the challenged code provisions were an abuse of corporate power, would result in the execution of contracts in contravention of law, and would result in the misapplication of funds.

{¶ 30} Article XVIII, Section 3 of the Ohio Constitution provides for municipal home rule: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Thus, the home rule provisions of the Ohio Constitution give municipalities "the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature of interest." *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212 (1948).

{¶ 31} The Supreme Court has held that "R.C. 9.68 is a general law that displaces municipal firearm ordinances and does not unconstitutionally infringe on municipal home rule authority." *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, paragraph one of the syllabus. R.C. 9.68 provides in pertinent part:

> (A) The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.

> (B) In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person,

group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section.

{¶ 32} Here, unlike in *Teamsters*, firearm plaintiffs alleged more than a bare claim that the challenged ordinance was statutorily noncompliant. As in *Fisher*, the firearm plaintiffs asserted the challenged ordinance impacted the public right to keep and bear arms and all peripheral rights guaranteed by the United States Constitution, Ohio Constitution, R.C. 9.68, and further implicated the limits of home rule. Therefore, based on the facts and circumstances of this case, we find Witt meets the criteria of seeking to enforce a public right. Thus, Witt had standing to pursue a statutory taxpayer action for injunctive relief.

### 3. Whether OCC and BFF Have Associational Standing for Injunctive Relief Under R.C. 733.59

{¶ 33} Next, the City asserts OCC and BFF cannot establish taxpayer standing because they do not meet the definition of "taxpayer" as construed by the Supreme Court. As previously noted, taxpayer, as that term is used under R.C. 733.59, has been construed to mean " '*any person* who, in a private capacity as a *citizen, elector, freeholder or taxpayer,* volunteers to enforce a right of action on behalf of and for the benefit of the public.' " (Emphasis added.) *White* at 40, quoting *Nimon* at paragraph two of the syllabus. The City argues that OCC and BFF cannot maintain a taxpayer action under R.C. 733.59 because as "not-for-profit corporations * * * [n]either is an individual taxpayer or citizen." (The City's Merit Brief at 17.)

{¶ 34} Firearm plaintiffs argue that OCC and BFF are "non-profit corporations with standing to sue on behalf of their members, even without express statutory authorization." (Firearm Plaintiffs' Merit Brief at 18.) Firearm plaintiffs argue that OCC and BFF have associational standing based on R.C. 733.59 and 9.68.

{¶ 35} It is not necessary for us to analyze whether OCC and BFF meet criteria for associational standing to pursue injunctive relief under R.C. 733.59 because they did not allege within their complaint they are a citizen, elector, freeholder, or taxpayer as that term has been construed under R.C. 733.59. Therefore, we find OCC and BFF do not have standing under R.C. 733.59.

{¶ 36} The Supreme Court of the United States has held that "an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 342 (1977). Under the test articulated in *Hunt*, an association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt* at 343. *See Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994) (adopting *Hunt* test for associational standing); *State ex rel. Food & Water Watch v. State*, ___ Ohio St.3d ___, 2018-Ohio-555, ¶ 18, citing *League of United Latin Am. Citizens v. Kasich*, 10th Dist. No. 10AP-639, 2012-Ohio-947, ¶ 19. "[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth* at 515.

{¶ 37} We recognize that Ohio courts have implicitly recognized the standing of associations in statutory taxpayer actions. *See Fisher* at ¶ 18 (finding that Robert Fisher and the Association of Cleveland Fire Fighters, Local 93 of the International Association of Fire Fighters had standing to bring a statutory taxpayer complaint pursuant to R.C. 733.59). *See generally State ex rel. Jones v. Hamilton Cty. Bd. of Commrs.*, 124 Ohio App.3d 184, 187 (1st Dist.1997) (reviewing the denial of a permanent injunction in a statutory taxpayer action brought by a union and two individual taxpayers); *Natl. Elec. Contrs. Assn. v. Mentor*, 108 Ohio App.3d 373, 380 (11th Dist.1995) (affirming judgment finding municipality violated statute in taxpayer action brought by resident taxpayer and association of electrical contractors). *But see Ohioans for Concealed Carry, Inc. v. Cleveland*, 8th Dist. No. 104970, 2017-Ohio-1560, ¶ 43-44 (finding that because letter required under R.C. 733.59 was filed by Ohioans for Concealed Carry, an organization that was not "an individual taxpayer or citizen," on McIntosh's behalf, McIntosh lacked standing to bring a taxpayer action because "the letter is a statutory requirement, and the rule does not authorize taxpayer actions by proxy"). These cases, however, do not directly address

standing nor inform what the associations alleged in their complaints, i.e., did they allege they met the definition of taxpayer.

{¶ 38} As previously noted, the Supreme Court has construed the term "taxpayer" as used in R.C. 733.59 as " 'contemplat[ing] and includ[ing] any person who, in a private capacity as a citizen, elector, freeholder or taxpayer, *volunteers to enforce a right of action on behalf of and for the benefit of the public*, and any such person is subject to the conditions imposed by that section, unless waived.' "  (Emphasis added.)   *White* at 40, quoting *Nimon* at paragraph two of the syllabus.  Because firearm plaintiffs failed to assert OCC and BFF were a "citizen, elector, freeholder or taxpayer," we need not analyze their claims under *Hunt*.   *See McBee* at ¶ 12 (finding that "common law requirements for standing do not apply when standing is conferred by statute").

## C. Standing Under R.C. 9.68

{¶ 39} Next, firearm plaintiffs argue they have standing for their claims under R.C. 9.68 itself.  In support of this argument, firearm plaintiffs point to the provision in R.C. 9.68 stating that "[i]n addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section." R.C. 9.68(B).

{¶ 40} Although R.C. 9.68 provides for relief in the form of costs and reasonable attorney fees in addition to any other relief provided upon a successful challenge to an ordinance, rule, or regulation in conflict with R.C. 9.68, it makes no mention of standing under R.C. 9.68, nor does it provide for a cause of action under R.C. 9.68 itself.  As a result, we decline to find that R.C. 9.68 confers standing on a party challenging a municipal ordinance.  *ProgressOhio.org* at ¶ 22 (rejecting argument that statute, which was silent on the issue of standing, granted standing or abrogated common law requirements for standing).  *See Bresnik v. Beulah Park Ltd. Partnership, Inc.*, 67 Ohio St.3d 302, 304 (1993), quoting *State v. Sullivan*, 81 Ohio St. 79 (1909), paragraph three of the syllabus (" 'Statutes are to be read and construed in the light of and with reference to the rules and principles of the common law in force at the time of their enactment, and in giving construction to a statute the legislature will not be presumed or held, to have intended a repeal of the settled rules of the common law *unless the language employed by it clearly expresses or imports such intention*.' ").  (Emphasis sic.)

**D. Standing Under Public-Right Doctrine**

{¶ 41} Firearm plaintiffs also argue they have standing for their claims under the common law public-right doctrine as outlined in *Sheward*. This argument fails because "[a]s *Sheward* makes clear, the public-right doctrine applies only to original actions in mandamus and/or prohibition." *ProgressOhio.org* at ¶ 10, citing *Sheward* at paragraph one of the syllabus. Therefore, we find firearm plaintiffs do not have standing under the public-right doctrine as they seek an injunction and declaratory judgment.

**E. Standing Under Declaratory Judgment Act**

{¶ 42} Finally, we consider whether firearm plaintiffs have standing under the Declaratory Judgment Act. R.C. 2721.03 provides, in pertinent part, that "any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, [or] municipal ordinance * * * may have determined any question of construction or validity arising under the * * * constitutional provision, statute, [or] ordinance * * * and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.12(A) provides, in pertinent part, that "[i]n any action or proceeding that involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and, if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard."

{¶ 43} In the trial court, firearm plaintiffs filed notice, pursuant to R.C. 2721.12, to the attorney general of the state of Ohio that they had filed a complaint for declaratory relief against the City. In their reply to the City's memorandum in opposition to their motion for preliminary injunction, firearm plaintiffs asserted they had standing for declaratory relief under R.C. 2721.03 and 2721.12.

{¶ 44} "[T]he three prerequisites to declaratory relief are (1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org* at ¶ 19. *See One Energy Ents., LLC v. Ohio Dept. of Transp.*, 10th Dist. No. 17AP-829, 2019-Ohio-359, ¶ 31, citing *Aust v. Ohio State Dental Bd.*, 136 Ohio App.3d 677, 681 (10th Dist.2000). In order for a real controversy to exist " 'there must be a "genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ' " *One*

*Energy* at ¶ 32, quoting *Town Ctrs. Ltd. Partnership v. Ohio State Atty. Gen.*, 10th Dist. No. 99AP-689 (Apr. 4, 2000), quoting *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13 (8th Dist.1988). "A controversy is justiciable when it presents 'issues that are ripe for judicial resolution and which will have a direct and immediate impact on the parties.' " *One Energy* at ¶ 32, quoting *Cristino v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 13AP-772, 2014-Ohio-1383, ¶ 22, citing *Stewart v. Stewart*, 134 Ohio App.3d 556, 558 (4th Dist.1999). "As with other forms of action, a plaintiff must establish standing as a proper plaintiff to seek declaratory relief." *Wurdlow v. Turvy*, 10th Dist. No. 12AP-25, 2012-Ohio-4378, ¶ 14.

{¶ 45} Here, firearm plaintiffs raise no arguments on appeal related to the applicability of R.C. 2721.03. The City points out that firearm plaintiffs failed to allege Witt owned or planned to purchase a bump stock, or OCC and BFF, either as organizations or with respect to their individual members, suffered injury or were impacted by the challenged ordinance. "Injury that is borne by the population in general and does not affect plaintiff in particular is typically insufficient to confer standing upon the plaintiff to bring suit against a defendant." *Wurdlow* ¶ at 15, citing *Tiemann v. Univ. of Cincinnati*, 127 Ohio App.3d 312, 325 (10th Dist.1998), citing *Allen v. Wright*, 468 U.S. 737 (1984). Having carefully reviewed the complaint, we agree that firearm plaintiffs did not allege the challenged ordinance affected them in particular, as opposed to the general public, either as a result of their current status or due to potential future prosecution. As a result, we find firearm plaintiffs failed to demonstrate standing to seek declaratory relief under R.C. 2721.03. *ProgressOhio.org* at ¶ 19 (finding the appellants lacked standing under Declaratory Judgment Act where they failed to show their rights were at stake or that speedy relief was necessary to preserve their rights); *Wurdlow* at ¶ 16; *Orser v. Perrysburg*, 6th Dist. No. WD-16-038, 2017-Ohio-5843, ¶ 20. *See Brown v. Columbus City Schools Bd. of Edn.*, 10th Dist. No. 08AP-1067, 2009-Ohio-3230, ¶ 13; *League of United Latin Am. Citizens* at ¶ 21.

## F. Conclusion as to Standing Issues

{¶ 46} Having found on the facts of this case as alleged in the complaint that: (1) Witt possesses statutory taxpayer standing, pursuant to R.C. 733.59, for the claim for injunctive relief, (2) OCC and BFF failed to establish standing under R.C. 733.59 for the claim for injunctive relief, (3) firearm plaintiffs failed to establish standing under R.C. 9.68,

(4) firearm plaintiffs failed to establish standing under the public-right doctrine, and (5) firearm plaintiffs failed to establish standing for their declaratory judgment claim, we overrule in part and sustain in part the City's first assignment of error.

## IV. Second Assignment of Error—Consolidation of Preliminary Injunction Hearing with a Trial on the Merits

{¶ 47} In its second assignment of error, the City asserts the trial court erred by consolidating the preliminary injunction hearing with a trial on the merits.

{¶ 48} Civ.R. 65(B)(2) governs the consolidation of a preliminary injunction hearing with a trial on the merits, providing in pertinent part:

> Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (B)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

{¶ 49} Thus, under Civ.R. 65, a court has the discretion to consolidate a hearing on a preliminary injunction with a trial on the merits in order to prevent two hearings and save time and expense for the court and parties. Staff Note, Civ.R. 65. However, " 'it is generally improper to dispose of a case on the merits following a hearing for a preliminary injunction without consolidating that hearing with a trial on the merits or otherwise giving notice to counsel that the merits would be considered.' " *Cairelli v. Brunner*, 10th Dist. No. 15AP-854, 2016-Ohio-5535, ¶ 24, quoting *Seasonings Etcetera, Inc. v. Nay*, 10th Dist. No. 92AP-1056 (Feb. 23, 1993), citing *George P. Ballas Buick-GMC, Inc. v. Taylor Buick, Inc.*, 5 Ohio App.3d 71 (6th Dist.1982). *See Athens v. Testa*, 10th Dist. No. 18AP-144, 2019-Ohio-277, ¶ 21; *Ohio Serv. Group, Inc. v. Integrated & Open Sys., LLC*, 10th Dist. No. 06AP-433, 2006-Ohio-6738, ¶ 10. In order to "ensure the parties a full and fair opportunity to litigate, the trial court must provide the parties with a clear and unambiguous notice of the court's intent to consolidate in enough time to allow the parties to prepare and present their cases at the hearing." *Athens* at ¶ 21. Here, the trial court gave no advance notice that it intended to consolidate the preliminary injunction hearing with a trial on the merits. In the June 29, 2018 pleading requesting an evidentiary hearing on the preliminary injunction, the City

stated it "[did] not consent to combining the hearing for a preliminary injunction with the trial on the merits." (June 29, 2018 Notice.)

{¶ 50} In their July 2, 2018 pleading, firearm plaintiffs agreed a hearing was required, but asserted the nature of the hearing was "to argue the few *points of law* raised by [the City's] opposition memorandum concerning [firearm plaintiffs'] legal standing and the efficacy of the claims raised in the Complaint." (Emphasis added.) (July 2, 2018 Notice at 2.) Firearm plaintiffs further asserted the "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held (an event the City now insists upon)" and stated that "[a] party thus is not required to prove his case in full at a preliminary-injunction hearing." (July 2, 2018 Notice at 2.) Firearm plaintiffs stated it was their "expectation * * * that the proceeding scheduled for July 9, 2018 is limited to hearing argument of counsel so that the Court may determine *if* presentation of evidence is warranted, and if so, to establish a time for an appropriate evidentiary hearing on a motion for permanent injunction." (Emphasis sic.) (July 2, 2018 Notice at 3.) However, if the trial court elected to pursue an alternative procedure, firearm plaintiffs "request[ed] a 14-day continuance of the TRO and the right to engage in expedited discovery to fully prepare for the hearing." (July 2, 2018 Notice at 3.)

{¶ 51} Following closing arguments at the July 9, 2018 hearing, the trial court stated it would "extend the TRO 14 days and have a decision out on the motion for a preliminary injunction * * * within the 14 days." (Tr. at 105.) After counsel for firearm plaintiffs suggested combining the decision on the preliminary injunction with the decision on the merits, counsel for the City objected. The trial court declined to decide at the hearing whether it would consolidate the proceedings. Ultimately, the trial court did not order consolidation until it issued its decision on the merits. By failing to provide clear and unambiguous notice of its intent to consolidate, the trial court erred. *Athens* at ¶ 22.

{¶ 52} However, in order to be entitled to reversal, a party must not merely demonstrate it was denied proper notice, but also that the denial of notice was prejudicial. *Athens* at ¶ 22, citing *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 185 (2000), citing *Smith v. Flesher*, 12 Ohio St.2d 107, 110 (1967). *See Cairelli* at ¶ 25, citing *Taylor Buick, Inc.* at 71 (stating "[t]here is some authority that a trial court acts properly without notice of consolidation if, after an extensive hearing, the evidence does not reveal

any conflict of material fact that justifies a full trial on the merits"). A party may establish prejudice by demonstrating that " 'the lack of notice caused the complaining party to withhold certain proof which would show * * * entitlement to relief on the merits.' " *Athens* at ¶ 22, quoting *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1106 (5th Cir.1972). *See Johnson v. White*, 528 F.2d 1228, 1231 (2d Cir.1975) (stating that, in order to be entitled to reversal for consolidation without notice, "a party must show, not only surprise but 'prejudice' in the sense of having other material evidence to introduce").

{¶ 53} At the hearing, counsel for the City objected to firearm plaintiffs' request to introduce expert testimony, stating that "[w]e have never received an expert report. We are entitled to one before an expert testifies. I understand it's a preliminary injunction hearing, but we are still entitled to one." (Tr. at 20-21.) Further, counsel for the City stated, "I can't possibly cross-examine somebody without having a report in front of me detailing what his theory is and how he'd reached it." (Tr. at 22.) In response the trial court stated:

> I think his background and experience qualifies him as an expert. The only problematic thing is the lack of a report, I would agree with you there. But we did have expedited discovery; and if there's any prejudice by not having a report in advance, then I think we could cure it by continuing the hearing and giving you time to react to what he has to say if necessary.

(Tr. at 22-23.) The record reflects the firearm plaintiffs did not disclose the name of their witness until the morning of the hearing. Following closing arguments, counsel for the City, in objection to firearm plaintiffs' suggestion to consolidate the preliminary injunction proceedings with a decision on the merits, reiterated that he was unable to "properly cross-examine an expert who provided no report," arguing that this constituted "a harm to [the City]." (Tr. at 107.) Additionally, counsel for the City argued "we have not filed anything that would allow this Court at this point -- neither side has filed anything that would allow this Court at this point to end the case." (Tr. at 107.)

{¶ 54} On appeal, the City asserts it made strategic decisions about the presentation of evidence based on the procedural status of the matter. Specifically, the City asserts that had it been informed the trial court intended to reach a decision on the merits, they would have "presented a wide range of factual evidence to the court—including their own expert" and "evidence concerning how a bump stock works, how it is commonly described and

referred to in the firearms industry, and evidence to refute the claims of [firearm] Plaintiffs' expert."  (The City's Merit Brief at 28.)

{¶ 55} Loc.R. 43.01 of the Franklin County Court of Common Pleas provides that "[e]ach party shall, no later than the date for disclosure designated in the Case Schedule, serve on all parties and file with the court a written disclosure of all persons with relevant factual or expert knowledge whom the party reserves the option to call as witnesses at trial." Loc.R. 43.03 of the Franklin County Court of Common Pleas provides:

> Disclosure of witnesses under this rule shall include the following information:
>
> (a) All witnesses. Name, addresses, and business phone number (or home phone number, if no business number is available).
>
> (b) Lay witnesses. A brief description of witness' relevant knowledge.
>
> (c) Experts.  A brief description of the expert's qualifications and summary of the expert's opinions and the basis or theory of that opinion.

Loc.R. 43.04 of the Franklin County Court of Common Pleas provides that "[a]ny witnesses not disclosed in compliance with this rule may not be called to testify at trial, unless the Trial Judge orders otherwise for good cause and subject to such conditions as justice requires."

{¶ 56} Based on the facts and circumstances of this case, we find the City suffered prejudice resulting from the lack of notice of consolidation.  It is undisputed that firearm plaintiffs failed to disclose their intention to introduce expert testimony prior to the hearing.  Additionally, firearm plaintiffs failed to provide the description of qualifications and the summary of the expert's opinion and the basis or theory of that opinion.  The City repeatedly objected to Steley's testimony, stressing it was unable to effectively cross-examine the witness due to the lack of notice and failure to provide an expert report. Although the trial court, in its entry granting a permanent injunction, stated "[t]here are no factual issues in this matter," it specifically cited Steley's testimony in determining whether a bump stock was an accessory or component of a firearm.  (Decision at 4.)  Thus, this testimony was material to the trial court's resolution of the issues and, as a result, the City

suffered prejudice by being denied a "full and fair opportunity" to develop testimony in response. *Athens* at ¶ 21.

{¶ 57} Therefore, because the trial court consolidated the preliminary injunction proceedings with a decision on the merits without notice and over objections, depriving the City a full and fair opportunity to present evidence, we conclude the trial court committed prejudicial error. *Bexley v. Duckworth*, 10th Dist. No. 99AP-414 (Mar. 7, 2000) (reversing consolidation without notice of preliminary proceedings with decision on the merits where defendants argued they "were unprepared to cross-examine one of plaintiff's witnesses" and "would have presented other direct evidence and conducted more extensive cross-examination had they been aware that the case was being tried on the merits"); *Ohio Serv. Group, Inc.* at ¶ 19; *Woe v. Cuomo*, 801 F.2d 627, 629 (2d Cir.1986) (reversing trial court's consolidation without notice of preliminary injunction proceedings with trial on the merits in order to "afford[] appellants a fair opportunity to present evidence at the trial in chief"). As a result, we must vacate the judgment of the trial court and remand for a full hearing on the merits. We note that the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. *See Bexley*, citing *Ladner v. Plaza Del Prado Condominium Assn., Inc.*, 423 So.2d 927, 929 (Fla.App.1982); *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). We specifically make no determinations regarding the merits in this decision. Accordingly, we sustain the City's second assignment of error.

## V. Third, Fourth, and Fifth Assignments of Error, First and Second Assignments of Error on Cross-Appeal, and Motion to Vacate and Remand

{¶ 58} Having found the trial court prejudicially erred by consolidating the preliminary injunction proceedings with a decision on the merits, the City's third, fourth, and fifth assignments of error, firearm plaintiffs' first and second assignments of error on cross appeal, and the City's motion to vacate and remand are rendered moot.

## VI. Conclusion

{¶ 59} Having overruled in part and sustained in part the City's first assignment of error, sustained the City's second assignment of error, and found the City's third, fourth, and fifth assignments of error and firearm plaintiffs' first and second assignments of error on cross appeal, and motion to vacate and remand to be moot, we reverse the judgment of

the Franklin County Court of Common Pleas and remand this matter for further proceedings in accordance with law and consisted with this decision.

*Judgment reversed;*
*cause remanded.*

BROWN and LUPER SCHUSTER, JJ., concur.